

1   Shana E. Scarlett (217895)
    HAGENS BERMAN SOBOL SHAPIRO LLP
2   715 Hearst Avenue, Suite 202
    Berkeley, CA  94710
3   Telephone: (510) 725-3000
    Facsimile:  (510) 725-3001
4   shanas@hbsslaw.com

5   Harry Shulman (209908)
    SHULMAN LAW
6   44 Montgomery Street, Suite 3830
    San Francisco, California 94104
7   Telephone: (415) 901-0505
    Facsimile: (866) 422-4859
8   harry@shulmanlaw.com

9   Steve Berman (*pro hac vice* application to be filed)
    Ari Brown (*pro hac vice* application to be filed)
10  HAGENS BERMAN SOBOL SHAPIRO LLP
    1918 Eighth Avenue, Suite 3300
11  Seattle, Washington 98101
    Telephone: (206) 623-7292
12  Facsimile: (206) 623-0594
    steve@hbsslaw.com
13  ari@hbsslaw.com

14

15  *Attorneys for Plaintiff Priscilla Barton*

16              UNITED STATES DISTRICT COURT

17           NORTHERN DISTRICT OF CALIFORNIA

18  PRISCILLA BARTON, individually and on
    behalf of all others similarly situated,
19                                          No.  
                                    Plaintiff,
20                                                CLASS ACTION COMPLAINT
21          v.
                                                DEMAND FOR JURY TRIAL
22  CAPITAL ONE BANK (USA), N.A.,

23                                  Defendant.

24

25

26

27

28

010257-11  558915 V1

# TABLE OF CONTENTS

**Page(s)**

I.      INTRODUCTION ...................................................................................................1

II.     JURISDICTION ....................................................................................................3

III.    INTRADISTRICT ASSIGNMENT ......................................................................4

IV.     PARTIES ...............................................................................................................4

V.      FACTS COMMON TO PLAINTIFF AND THE CLASSES ................................4

       A.      Cap One's Standard Cardholder Contractual Terms ...................................4

       B.      Cap One's 0% Balance Transfer Promotions ..............................................5

VI.     FACTS AS TO PLAINTIFF ................................................................................7

VII.    CLASS ALLEGATIONS ....................................................................................10

VIII.   COUNTS ..............................................................................................................12

      COUNT I  BREACH OF CONTRACT UNDER VIRGINIA LAW ....................................12

      COUNT II  BREACH OF CONTRACT / BREACH OF DUTY  OF GOOD
              FAITH AND FAIR DEALING UNDER VIRGINIA LAW....................................14

      COUNT III   VIOLATION OF THE CARD ACT ..............................................................15

      COUNT IV  VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW......16

      COUNT V  UNDER THE DECLARATORY JUDGMENT ACT, 28 U.S.C. § 2201 .........18

PRAYER FOR RELIEF ...................................................................................................18

JURY TRIAL DEMAND..................................................................................................20

## I.     INTRODUCTION

1.      Plaintiff Priscilla Barton brings this class action on behalf of herself and all other similarly situated United States credit card holders of Capital One Bank (USA), N.A. ("Cap One"). Plaintiff seeks redress for the damages caused by Cap One's breach of its standard form cardholder agreements, and its deceptive representations and omissions surrounding its "0%" balance transfer offers.

2.      Prior to the point in time when a Cap One cardholder accepts a Cap One balance transfer offer (which are further described below), the cardholder receives a monthly account statement from Cap One which, among other things, identifies a cardholder's "New Balance." The New Balance is comprised of several components, including any purchases made during that month ("new purchases"), any outstanding balance left from the previous month, and any interest charges or other fees.

3.      Under the terms of Cap One's standard form customer agreement, Cap One cardholders have 25 days after the close of each billing cycle in which to pay their New Balance without incurring interest on new purchases made during that billing cycle. This 25-day period is referred to as the "Grace Period" in Cap One's standard cardholder agreements. If the cardholder pays the New Balance in full within the Grace Period, the contract specifies that the cardholder will not be assessed interest, and no interest charges will appear on the cardholder's next monthly statement. For cardholders who regularly pay their monthly statements in full, the amount of their purchases during that month ("new purchases") and their New Balances will be the same. Such cardholders will never incur a monthly interest charge as long as they continue to pay their New Balance each month.

4.      Conversely, the cardholder agreement provides that cardholders who pay less than their New Balance within the Grace Period will be charged interest. Such interest charges will show up on the cardholder's next monthly statement.

5.      Cap One monthly statements contain a chart listing various segments of the total balance owed on the cardholder's account. One segment in this chart shows the "purchase balance subject to interest rate" ("purchase balance"). The "purchase balance" is the cumulative total of

COMPLAINT                                                 - 1 -
010257-11 558915 V1

1   new purchases that were not paid in full when due, plus interest and fees, and less payments.

2   Cardholders who regularly pay their accounts in full and on time will have a zero purchase balance,

3   and accordingly, will not be assessed interest.  Cardholders who do not pay their accounts in full

4   will be charged interest on the entire amount of their purchase balance.

5         6.     Numerous times every year, Cap One solicits its cardholder base to take 0% balance

6   transfers.  Cap One markets the balance transfers as a "chance to save" – a means for the

7   cardholder to pay off higher interest loans owed to other creditors.  Cap One promises that these

8   balance transfers will carry 0% interest for six or twelve months.  To accept a balance transfer

9   offer, all a cardholder has to do is use one of the "convenience checks" which come attached to the

10  offer.  Cap One promises that it will segregate the transferred balance from other segments of the

11  cardholder's account.  The balance transfer comes at a cost:  Cap One charges the cardholder a fee

12  of 2%-3% of the total balance transferred.

13        7.     Unbeknownst to Plaintiff and Classes, however, once a cardholder accepts Cap

14  One's "0% interest" balance transfer offer, Cap One unilaterally, and in breach of the cardholder

15  agreement, eliminates the Grace Period and begins charging interest on all new purchases from the

16  date of the balance transfer forward.

17        8.     Cap One did not disclose that it would eliminate the Grace Period for cardholders

18  who accepted Cap One's 0% balance transfer offers and subject them to high interest charges.  Cap

19  One did not disclose that the only way for these cardholders to avoid interest charges on new

20  purchases once they accepted a 0% balance transfer offer was to pay the full amount of these

21  purchases PLUS THE FULL AMOUNT of the balance transfer – in the same month that the

22  cardholder accepted the balance transfer, even though the promotional period on the 0% offer was

23  for 6 or 12 months.  Cap One did not disclose that, by accepting the 0% offer, customers would be

24  put to the choice of either paying interest on their new purchases, thereby losing the benefit of the

25  Grace Period; or, immediately repaying the transferred balance in full, thereby losing the benefit of

26  the balance transfer (for which the cardholder paid a 2%-3% fee).  Contrary to the simple "chance

27  to save" that Cap One represented the balance transfer would provide, and that cardholders paid

28

COMPLAINT                         - 2 -
010257-11  558915 V1

1    for, many cardholders who accepted these offers found themselves worse off than they were

2    beforehand.

3        9.      This unilateral elimination of the Grace Period upon accepting Cap One's 0%

4    promotional balance transfer offer violates the cardholder agreement.  Further, by unilaterally

5    changing the terms regarding repayment of outstanding balances, Cap One violated the federal

6    Credit Card Accountability, Responsibility and Disclosure Act ("CARD Act").

7        10.     This was not the only way in which Cap One violated the CARD Act through its

8    balance transfer offers.  Under the CARD Act, credit card companies are required to apply any

9    amount over the cardholder's minimum payment to card balances subject to higher interest rates,

10   before they apply any portion of the payment to lower interest balances.  Here, however, Cap One

11   allocated amounts above a cardholder's minimum payment to the 0% transferred balance segment,

12   instead of to segments carrying a higher interest rate.  This practice violated the CARD Act.

13       11.     As a result of Cap One's breach of the cardholder agreement, Plaintiff and the

14   Classes were subjected to unnecessary interest charges and paid fees to Cap One to transfer

15   balances for a benefit they did not receive.

16                              **II.     JURISDICTION**

17       12.     This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C.

18   § 1640(e), the Truth in Lending Act, as a result of the CARD Act violations alleged herein.

19       13.     This Court also has subject matter jurisdiction over this action under 28 U.S.C.

20   § 1332(d)(2) in that the matter is a class action wherein the amount in controversy exceeds the sum

21   or value of $5,000,000, exclusive of interest and costs, and members of the Class are citizens of

22   States different from the defendants.

23       14.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), because Cap One

24   regularly conducts business in the Northern District of California, the plaintiff resides in this

25   district, and several of the unlawful practices alleged herein were committed in this District.

26

27

28

COMPLAINT                              - 3 -
010257-11  558915 V1

III.   **INTRADISTRICT ASSIGNMENT**

15.    Pursuant to Civil L.R. 3-2(d), assignment to the San Francisco or Oakland division of this Court is proper because Plaintiff resides in this district and a substantial portion of the events giving rise to the claims occurred therein.

IV.   **PARTIES**

16.    Plaintiff Priscilla Barton is an individual residing in Dublin, California (Contra Costa County).  Plaintiff has been a Cap One cardholder during the relevant period of time and was damaged by defendant's conduct alleged herein.

17.    Defendant Capital One Bank (USA), N.A. ("Cap One") is a federal bank headquartered in Virginia.  As of February 2008, the Office of the Comptroller of the Currency has designated Capital One Bank (USA), N.A a limited purpose bank under 12 C.F.R. § 25.25.  Capital One Bank (USA), N.A is a wholly owned and controlled subsidiary of Capital One Financial Corporation.

18.    Cap One is among the largest issuers of credit cards in the nation.  According to Card Hub, Cap One is now the fifth-largest issuer of Visa and MasterCard credit cards in the United States, reflecting $55 billion of American consumer debt with customers throughout the country.

V.   **FACTS COMMON TO PLAINTIFF AND THE CLASSES**

**A.     Cap One's Standard Cardholder Contractual Terms**

19.    Cap One credit cards carry a high rate of interest on balances customers do not pay off in full each month.  Cap One customers can avoid paying these high interest rates by paying for their new purchases in full during the Grace Period.

20.    Cap One's standard form "Customer Agreement" contains the following provisions:

**Interest Charges and Fees**

We will charge Interest Charges and Fees to your account as disclosed to you in your Statements and other Truth in Lending Disclosures.  In general, Interest charges begin to accrue from the day a transaction occurs.  However, *we will not charge you interest on any new balances* posted to the purchase Segment of your account provided you have paid your previous balance in full by the due date. (Emphasis added.)

COMPLAINT                                    - 4 -
010257-11  558915 V1

See Ex. A at p. 5; Ex. B at p. 4 (Exs. A and B are older (Ex. B) and current (Ex. A) Cap One

agreements; this term is the same in each).

21.     Cap One's statement of Terms regarding its credit card, in turn, provides as follows:

**Paying Interest**

Your due date is at least 25 days after the close of each billing cycle. *We will not charge interest on new purchases*, provided you have paid your previous balance in full by the due date each month.  We will begin charging interest on cash advances and transfers on the transaction date.  (Emphasis added).

See Ex. A at p. 1; Ex. C at p. 1 (Exs. A and C are older (Ex. C) and current (Ex. A) Cap One

Terms; this term is the same in each).

22.     The same statement of Terms also contains a section entitled "Things You Should

Know About These Offers."  The section provides as follows:

**How Can I avoid Paying Interest Charges?**

Each month you pay your "New Balance" in full by the due date, *you will have a minimum grace period of 25 days with no interest charge* on all new 1) purchases, 2) balance transfers, 3) special purchases and 4) other charges.  If you have been paying your account in full with no interest charges applied and you do not pay your next bill in full, prorated interest charges will be assessed.  …  (Emphasis added.)

Ex. A at p. 2; Ex. C at p. 3.  Cap One regularly includes an identical provision on the back of

customer monthly account statements.

23.     In addition, Cap One's Customer Agreement also provided:

**New Offers**

In the future, we might make new offers to you or forward offers from others that we think you might be interested in.  These offers may have new or different terms and documentation for these offers will be provided when we make you the offer.  If you accept the offer, your previously disclosed terms will still apply except as modified by the offer.

See Ex. A, at p. 3; Ex. B at p. 2.

**B.     Cap One's 0% Balance Transfer Promotions**

24.     Using substantially similar marketing letters, Cap One solicited its cardholders to

transfer amounts owed to other creditors to Cap One, up to the remaining credit limit of their Cap

1    One accounts. The amount that the cardholder took pursuant to this offer was referred to as a

2    "balance transfer." Cap One charged a fee of 2% or 3% of the amount of the balance transfer.

3    These standardized offers promised that the money a cardholder borrowed pursuant to this offer

4    would carry a 0% Annual Percentage Rate ("APR") for six or 12 months.

5         25.    In extending these offers, Cap One sent mailings with enclosed checks, so that the

6    cardholder could accept the offer, up to his or her full remaining credit limit, merely by using an

7    included check. At the end of the applicable period, the outstanding balance would be subject to an

8    APR equal to the rate applicable to regular purchases.

9         26.    The offer also stated that any amount transferred pursuant to this offer would be

10   posted to a "special transfer segment" of the cardholders' account, and that this special transfer

11   segment would be kept separate and apart from the segment for new purchases. This was a

12   material element of the offer, because the only way Cap One could properly account for the zero-

13   percent balance transfer segment and the new purchase segment was to treat them separately. By

14   doing so, Cap One could keep both promises it made – first to provide a Grace Period for all new

15   purchases, and second to provide an interest free period for cardholders who accepted 0% balance

16   transfer offers. By lumping both balances together in the "New Balance" section of the statement

17   and requiring full payment of the New Balance in order to avoid interest, however, Cap One

18   breached both promises.

19        27.    Nowhere in its promotional offer (or in Cap One's cardholder agreement) did Cap

20   One disclose that by accepting the balance transfer offer, customers would lose the benefits of the

21   Grace Period unless they paid their entire amount of their new purchases as well as the entire

22   amount of the balance transfer. Yet, in breach of the contract between the parties, that is exactly

23   what happened. Many customers were improperly charged interest on new purchases after their

24   balance transfers despite paying for their new purchases, or purchase balance, in full. Others

25   simply repaid the balance transfers to avoid these interest charges, thereby losing the "chance to

26   save" which Cap One promised.

27

28

COMPLAINT                                    - 6 -
010257-11  558915 V1

28.     Cap One has been the subject of numerous complaints regarding its misleading balance transfer offers.  Some of the complaints have been aired publicly on Internet websites.  Examples of typical complaints are as follows:[1]

> [I] received an offer from Cap One credit card for 0% interest for one year and no balance transfer transaction fees.  Too good to be true, right?  I had my husband look at it to make sure I was seeing the offer correctly.  Yep.  I called Cap One to confirm - no interest for one year and no transaction\s fees.  I wrote the check.  I got the funds. I got my first bill.  No interest, no transaction fee. I got my second bill.  $245 of interest. … They have been nothing but trouble!!!  STAY CLEAR OF CAP ONE!!!!!

> In August 2010 I received an offer from Capital One Credit Cards for a balance transfer from other accounts at a 0% interest rate. I completed the balance transfer on September 8th and paid them $86.98 for the transaction. I have always paid the purchases portion of my credit card statements off monthly in order to receive no interest charge. I paid the purchases off in September and paid additional to be applied to the balance transfer portion.  I then noticed an interest charge on my October statement. I was told that I now have to pay the entire balance off, not just the purchases portion in order to have no service charge. … [I] spoke with a Sr. Supervisor who said that in fact I would have to pay the entire $6380 balance off, not just the $2254 purchases portion in order to not receive interest charges. This seems absurd to me in that I would have never done the 0% balance transfer if I knew I had to then pay the whole thing off.

## VI.     FACTS AS TO PLAINTIFF

29.     Plaintiff Priscilla Barton has held a Cap One credit card for several years.  Pursuant to the terms of the Cap One customer agreement, she has generally paid for her new purchases in full so as to avoid incurring any interest charges.

30.     During the summer of 2011, Ms. Barton received one of Cap One's promotional offers which stated, "This is your chance to save for 6 months."  The offer stated that if she used one of the enclosed checks before October 3, 2011, the funds she drew using the checks would carry a 0% APR for 6 months.  It also stated that Cap One would charge a fee of 3% for each transaction under this promotion.  A copy of the offer and the information enclosed with the offer are attached to this complaint as Exhibit D.

---

[1]     Available at: http://www.consumeraffairs.com/credit_cards/capital_one.htm

31.     In addition to being advertised as "a chance to save," the promotional offer also was described as being limited to select individuals and that the receiver of such offer needed to act quickly in order to take advantage of the offer.  For example, the promotional offer letter stated that, "[t]his chance to save isn't available to everyone.  And it won't last long.  So be sure to use the checks right away . . . ."

32.     The offer further explained that the amounts drawn using the enclosed checks would be treated as "special transfers" that would post to a "special transfer segment" of her account.

33.     Ms. Barton accepted the offer, and on or about October 11, 2011, she drew $2,400 to pay off the outstanding balance on another credit card.  In connection with the balance transfer, Ms. Barton paid a fee of $72, constituting 3% of the advanced amount, for the transfer.

34.     At the time Ms. Barton took the balance transfer, she had been paying off her balance in full during the Grace Period and therefore, had not been charged interest on any purchases.

35.     The balance transfer transaction and the $72 fee were reflected on Ms. Barton's next account statement for the billing period of September 29 - October 28, 2011.  The statement listed her "purchase balance" and her "special transfer balance" separately, but also lumped them together into the "New Balance."

36.     Ms. Barton was charged interest on her new purchases after accepting the balance transfer offer.  In violation of the agreement between the parties, at least one of these interest charges, in December 2011, was assessed even though she paid off the entire purchase balance shown on her billing statement and the only remaining portion of the New Balance was the 0% balance transfer.

37.     As of November 28, 2011, the closing date for her November statement, Ms. Barton still carried the transferred balance.  Her statement required a minimum payment of $55; Ms. Barton paid $1,680.27.

38.     Ms. Barton's statement for the billing period ended December 28, 2011, is extremely ambiguous as to how Cap One credited her $1,680.27 payment.  However, this much is clear:

COMPLAINT
010257-11 558915 V1

- 8 -

1       a.      The "purchase balance" stated on the preceding statement, for the period

2   ended November 28, 2011, was $1,418.15 plus an interest charge of $16.75. The "special transfer

3   balance" was $2,466.19.

4       b.      Ms. Barton's $1,680.27 payment should have paid off her purchase balance

5   completely, thereby eliminating any interest for that period.

6       c.      However, the December 28 statement not only indicates interest of $16.94,

7   but it indicates a purchase balance of $1,482.49, even though new charges totaled only $706.13.

8       39.     A similar allocation problem appears in Ms. Barton's statement for the period ended

9   January 28, 2012. Her December statement required a minimum payment of $46; Ms. Barton paid

10  $1,850. This payment should have been sufficient to pay off the entire purchase balance

11  ($1,482.49) from the December statement, but Ms. Barton was still charged interest of $13.56.

12      40.     Moreover, the January 28 statement indicates a purchase balance of $1,148.30, and

13  a special transfer balance of $2,327.72. This means that even though Cap One listed purchase

14  balances on which it charged interest at 13.9% from the December statement to the January

15  statement, it applied $93.78 of Ms. Barton's payment to the zero-interest special transfer segment.

16  This was $38.78 above her minimum payment. By failing to credit this amount to the higher

17  interest bearing purchase balance segment of the account, Cap One violated the CARD Act.

18      41.     Mr. Barton contacted Cap One customer service numerous times to complain about

19  her interest charges. She then learned what Cap One had hidden beforehand: that she could not

20  have both the balance transfer and the 25-day Grace Period. Outraged that she had been misled in

21  this way, she repaid the balance transfer in full in February 2012, well before the expiration of the

22  promotional period. Ms. Barton has been damaged in that Cap One never refunded the $72 fee she

23  paid for the balance transfer transaction.

24      42.     Both individually and through counsel, Ms. Barton attempted to resolve this dispute

25  with Cap One, without success.

26

27

28

COMPLAINT                                   - 9 -
010257-11  558915 V1

## VII.   CLASS ALLEGATIONS

43.     Plaintiff repeats and re-alleges every allegation above as if set forth herein in full.

44.     Plaintiff brings this action under Fed. R. Civ. P. 23(b)(3) on behalf of the following classes:

> Balance Transfer Class:  All Cap One cardholders with addresses in the United States who paid a fee for a 0% balance transfer pursuant to a Cap One balance transfer promotion, who were later charged interest on new purchases during the promotional period, despite paying their new purchases or purchase balances in full.

> California Subclass:  Those members of the Balance Transfer Class with addresses in California.

> CARD Act Class:  All Cap One cardholders with addresses in the United States who carried balances with different interest rates, who made payments in excess of the required minimum payment and had some or all of the excess amount applied to balances other than that with the lowest interest rate.

45.     The Class Period for both the Balance Transfer and California Subclass begins four years before the filing of this complaint, and extends until the present time.  The Class Period for the CARD Act Class begins one year before the filing of this complaint, and extends until the present time.

46.     Excluded from the Classes are governmental entities, defendants, their affiliates and subsidiaries, defendants' current or former officers, directors, agents, representatives, their family members, the members of this Court and its staff.

47.     Plaintiff does not know the exact size or identities of the members of the proposed Classes, since such information is in the exclusive control of Cap One.  Plaintiff believes that the Classes encompass many thousands of individuals whose identities can be readily ascertained from Cap One's books and records.  Therefore, members of the proposed Classes are so numerous that joinder of all members is impracticable.

48.     All members of the respective Classes have been subject to and affected by the same conduct.  The claims of the Balance Transfer Class are based on uniform customer contracts and balance transfer offers with standardized terms and conditions.  The claims of the CARD Act Class

1    are based on payments that were allocated to cardholder balances in accordance with automated

2    systems and algorithms.

3          49.      There are questions of law and fact that are common to the Classes, which

4    predominate over any questions affecting only individual members of the Classes. These questions

5    include, but are not limited to the following:

6                a.      The nature and scope of Cap One's obligations under its contractual

7    provisions;

8                b.      The written representations Cap One made to customers in the course of

9    marketing its balance transfer promotions;

10                c.      Whether Cap One sufficiently disclosed the fact that a customer who

11   accepted a balance transfer offer would thereafter lose his or her Grace Period on new purchases or

12   purchase balances;

13                d.      Whether Cap One breached the terms of its customer contracts in the course

14   of charging interest on new purchases or purchase balances after a customer accepted a balance

15   transfer offer;

16                e.      Whether charging interest on new purchases or purchase balances after a

17   customer accepted a balance transfer offer violated Cap One's duty of good faith and fair dealing;

18                f.      Whether the written solicitations Cap One used to market its balance transfer

19   promotions were unfair or deceptive to a reasonable customer;

20                g.      Whether the written solicitations Cap One used to market its balance transfer

21   promotions violated California's Unfair Competition Law;

22                h.      Whether Cap One violated the CARD Act by applying amounts in excess of

23   a cardholder's minimum payment to balances carrying lower interest rates, and by failing to

24   allocate payments to purchase balances properly;

25                i.      Whether the above practices caused members of the Classes to suffer injury;

26   and

27                j.      The proper measure of damages and the appropriate injunctive relief.

28

COMPLAINT                                              - 11 -
010257-11 558915 V1

50.     Plaintiff Barton is a member of the Classes. Her claims are typical of the claims of the Classes and do not conflict with the interests of any other members of the Classes. Both she and the other members of the Classes were subjected to the same conduct, and were governed by contracts and balance transfer offers with standard terms and conditions.

51.     Ms. Barton will fairly and adequately represent the interests of the Classes. She is committed to the vigorous prosecution of the Classes' claims and has retained attorneys who are qualified to pursue this litigation and have experience in class actions, including class actions against Cap One.

52.     A class action is superior to other methods for the fast and efficient adjudication of this controversy. A class action regarding the issues in this case does not create any problems of manageability.

53.     Questions of law or fact common to class members predominate over any questions affecting only individual members.

54.     Cap One has acted on grounds that apply generally to the Classes so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Classes as a whole.

## VIII.   COUNTS

## COUNT I

## BREACH OF CONTRACT UNDER VIRGINIA LAW

55.     Plaintiff repeats and re-alleges every allegation above as if set forth herein in full.

56.     Cap One's standard customer agreement states: "This Agreement will be interpreted using Virginia law. Federal law will be used when it applies." *See* Ex. A, p. 7. Accordingly, Virginia law applies to this claim.

57.     Plaintiff brings this claim on her own behalf and on behalf of each member of the Balance Transfer Class defined above.

58.     Plaintiff and the Class entered into express contracts with Cap One setting forth the terms and conditions of their credit card accounts all of which provide that Virginia law shall apply.

COMPLAINT
010257-11  558915 V1

- 12 -

59. Cap One sent promotional offers to selected cardholders offering the cardholders a "chance to save for 6 [or 12] months", or substantially similar language, by allowing its cardholders to take a cash advance from Cap One up to their pre-approved credit limit which would carry a 0% interest rate for the offer period. Pursuant to the express terms of Cap One's contract, the written promotional offer, when accepted, became part of the contract between Cap One and the cardholder.

60. The contract between Cap One and the cardholders provided that Cap One would provide a 25-day Grace Period on interest charges for new purchases, provided the cardholder paid his or her previous purchases in full by the due date.

61. However, once a cardholder took advantage of Cap One's balance transfer offers, Cap One unilaterally withdrew this Grace Period.

62. Cap One's practice of charging interest on new purchases, even when the cardholder paid these or associated purchase balances in full within 25 days, was a material breach of the contract between Cap One and its cardholders.

63. At some point after Ms. Barton accepted the balance transfer offer, Cap One added the following disclosure in the FAQ's (but not the Customer Agreement) accompanying the balance transfer offers:

> Can I avoid interest on new purchases after I transfer a balance?
> Once you transfer a balance with this offer, you will pay interest on any new purchases you make with your credit card unless you pay your entire balance (*including transferred balances*) in full each month. Please see you Customer Agreement for details On Interest Charges. (Emphasis added).

64. Prior to making this addition to its FAQs, Cap One did not, or did not effectively, notify cardholders that by accepting a balance transfer offer they would be giving up their Grace Periods.

65. The addition to the FAQs was ineffective to change the terms of the contracts between Cap One and its customers on a prospective basis, and it was too late for cardholders who accepted the balance transfer offers beforehand.

COMPLAINT
010257-11 558915 V1

- 13 -

66.     Cap One's breach of its contractual obligations deprived Plaintiff and the class of benefits they reasonably expected by accepting Cap One's "balance transfer" offer, and subjected them to interest which should never have been charged.

67.     Plaintiff and the Balance Transfer Class were damaged by Cap One's breach, in an amount to be proven at trial, including but not limited to the fees paid for balance transfers, and interest charged on new purchases or purchase balances that were paid in full.

## COUNT II

### BREACH OF CONTRACT / BREACH OF DUTY
### OF GOOD FAITH AND FAIR DEALING UNDER VIRGINIA LAW

68.     Plaintiff repeats and re-alleges every allegation above as if set forth herein in full.

69.     Cap One's standard customer agreement states: "This Agreement will be interpreted using Virginia law. Federal law will be used when it applies." *See* Ex. A, p. 7. Accordingly, Virginia law applies to this claim.

70.     Plaintiff brings this claim on her own behalf and on behalf of each member of the Balance Transfer Class described above.

71.     Plaintiff and the Balance Transfer Class entered into express contracts with Defendant setting forth the terms and conditions of their credit card accounts.

72.     Under the applicable contract terms, Cap One customers were promised a Grace Period on new purchases when they paid their purchase balances in full before the due date each month. They were also promised a "chance to save" or substantially similar opportunity through interest-free balance transfers.

73.     Cap One acted contrary to these promises for those customers who accepted its balance transfer offers. Instead, for these cardholders, Cap One began charging interest even if the cardholder paid off their new purchases, or purchase balances, in full. Once the cardholder availed herself of the balance transfer, the only way to avoid interest charges on any new purchases would be to either not make any new purchases, or, pay off all new purchases and the full amount of the balance transfer in the very same month that the cardholder availed herself of the balance transfer offer. Thus, the cardholder would pay Cap One 2%-3% of the balance transfer, while they would

lose the ability to use their card, or, would have to immediately pay back Cap One the entire balance transfer.  Cap One would therefore receive the benefit of the transaction fee and the cardholder would receive no benefit.

74.    Charging interest further denied Cap One customers of the benefit of the balance transfer bargain.  Whereas Cap One marketed the balance transfer promotions as a simple chance to save, in fact a customer would have to carefully evaluate whether the interest he or she would save through the balance transfer exceeded the amount he or she would pay on purchase balances. This is far from a simple calculation, and far from the simple benefit Cap One promised.  Whereas customers might or might not benefit through the balance transfer, Cap One benefitted either way.

75.    By denying its customers the benefit of its offer, and enriching itself in the process, Cap One violated the covenant of good faith and fair dealing implied in the contracts between it and its customers.

76.    Cap One's breach damaged plaintiff and the Balance Transfer Class in an amount to be proven at trial, including but not limited to, the fees paid for balance transfers, and interest charged on purchase balances that were paid in full.

## COUNT III

## VIOLATION OF THE CARD ACT

77.    Plaintiff repeats and re-alleges every allegation above as if set forth herein in full.

78.    Federal law applies to this claim.

79.    Plaintiff brings this claim on her own behalf and on behalf of each member of the CARD Act Class described above.

80.    The Credit Card Accountability, Responsibility, and Disclosure Act (111 P.L. 24, 123 Stat. 1734) is a series of amendments to the Truth in Lending Act.  It became effective on February 22, 2010, before Plaintiff was given, and before she accepted, Cap One's balance transfer offer.

81.    Section 101(c) of the CARD Act (15 U.S.C. § 1666i-1(c)(1)) provides, "the creditor shall not change the terms governing the repayment of any outstanding balance. . ."

82.     In addition, Reg. Z, 12 C.F.R. 226a(b)(5) and 226.6(b)(2)(v), which implements the CARD Act requirements, requires that creditors disclose any conditions on the availability of a grace period.

83.     By eliminating the contractual Grace Period for cardholders who accepted balance transfer offers, and failing to disclose this to cardholders, Cap One violated this provision of the Act and associated regulations.

84.     Ms. Barton has incurred damages in the amount of $72, the unreimbursed balance transfer fee she incurred, as a consequence of Cap One's breach of the CARD Act.

85.     Section 104(b)(1) of the CARD Act (15 U.S.C. § 1666c(b)(1)) provides, "Upon receipt of a payment from a cardholder, the card issuer shall apply amounts in excess of the minimum payment first to the card balance bearing the highest rate of interest, and then to each successive balance bearing the next highest rate of interest, until the payment is exhausted."

86.     By applying $38.78 above Plaintiff's required minimum payment on her January 28, 2011, statement to her zero-interest balance transfer segment, Cap One violated this provision of the Act. Ms. Barton suffered small, but measurable, actual damages as a result of this violation.

87.     Furthermore, Ms. Barton and the proposed Class are entitled to statutory damages of up to $1 million as a consequence of Cap One's violation of the CARD Act, pursuant to 15 U.S.C. § 1640(a)(2)(b) as amended by P.L 111-203 (Dodd-Frank).

88.     Plaintiff and the proposed class are further entitled to their attorneys' fees and costs, pursuant to 15 U.S.C. § 1640(a)(3).

## COUNT IV

## VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW

89.     Plaintiff repeats and re-alleges every allegation above as if set forth herein in full.

90.     Plaintiff brings this claim on her own behalf and on behalf of each member of the California Subclass described above.

91.     California law applies to this claim.

92.     California Business and Professions Code sections 17200, *et seq.*, "The Unfair Competition Law" ("UCL"), defines unfair competition to include any unlawful, unfair, or fraudulent business act or practice, and prohibits such conduct.

93.     Cap One violated the unlawful prong of the UCL through its violations of the CARD Act and implementing regulations, as specified above.

94.     Cap One violated the unfair prong of the UCL, in that the burden of its misrepresentations and omissions on consumers outweighed any purported legitimate benefit to Cap One.  Moreover, the misrepresentations and omissions are contrary to public policy or are immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers, and operate to the competitive disadvantage of other sellers that do not engage in such practices.

95.     Cap One's business acts and practices as alleged above constitute fraudulent business practices in that they were likely to deceive the public and affected consumers as to their legal rights and obligations regarding their Cap One credit cards.

96.     Had Plaintiff known that she would lose her Grace Period by accepting the balance transfer offer, she would never have accepted it.

97.     Plaintiff suffered the loss of money or property as a result of Cap One's violations of the UCL, specifically, the $72 fee she spent for the balance transfer, and the additional interest charge she incurred when a portion of her payment above the minimum payment was improperly applied to her zero-interest balance transfer segment.

98.     The unlawful, unfair and fraudulent business acts and practices alleged above present a continuing threat in that Cap One is currently engaging in such acts and practices and will persist and continue to do so unless and until an injunction is issued by this Court.  Therefore, Plaintiff requests an injunction pursuant to Business and Professions Code § 17203 prohibiting Cap One from engaging in these acts and practices.

99.     Plaintiff and the Classes are further entitled to restitution in the amount of:  1) all fees paid for balance transfer offers; 2) all interest charged during the Grace Period when a cardholder paid off his or her purchase balance in full; and 3) all additional interest paid as a result

of Cap One's application of amounts above the minimum payment to balances bearing a lower interest rate.

100.    Cap One should be enjoined from this misconduct in balance transfer offers.

101.    Plaintiff is entitled to an award of attorneys' fees and costs in prosecuting this action under Code of Civil Procedure § 1021.5.

### COUNT V

### UNDER THE DECLARATORY JUDGMENT ACT, 28 U.S.C. § 2201

102.    Plaintiff repeats and re-alleges every allegation above as if set forth herein in full.

103.    Pursuant to 28 U.S.C. § 2201, Plaintiff, on her own behalf and on behalf of each member of the Balance Transfer Class described above, seeks the following declaratory judgments:

       a.      That Cap One's practice of denying the Grace Period to consumers who accept balance transfer offers violates the contracts between the parties.

       b.      That Cap One's practice of denying the Grace Period to consumers who accept balance transfer offers violates the CARD Act.

104.    Pursuant to 28 U.S.C. § 2201, Plaintiff, on her own behalf and on behalf of each member of the CARD Act Class described above, seeks a declaratory judgment that Cap One's practice of applying amounts in excess of a cardholder's minimum payment to balances carrying a higher interest rate violates the CARD Act.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Priscilla Barton respectfully requests the Court to award the following relief:

A.      Certify this case as a class action and appoint Ms. Barton to be Class Representative and her counsel to be Class Counsel;

B.      On her first claim for relief, enter a judgment against Cap One for breach of contract, and award Plaintiff and the Balance Transfer Class compensatory damages in amounts to be proven at trial;

C.     On her second claim for relief, enter a judgment against Cap One for breach of the covenant of good faith and fair dealing, and award Plaintiff and the Balance Transfer Class compensatory damages in amounts to be proven at trial;

D.     On her third claim for relief, enter a judgment against Cap One for violation of the CARD Act, and award Plaintiff and the CARD Act Class compensatory and statutory damages in amounts to be proven at trial;

E.     On her fourth claim for relief, enter a judgment against Cap One for violation of the UCL, and award the California Subclass restitution of:  1) all fees paid for balance transfer offers; 2) all interest charged during the Grace Period when a cardholder paid off his or her purchase balance in full; and 3) all additional interest paid as a result of Cap One's application of amounts above the minimum payment to balances bearing a lower interest rate.  The Court should also enter an injunction preventing Cap One from continuing to breach its contracts and violate the CARD Act in conjunction with its balance transfer offers.

F.     On her fifth claim for relief, enter judgments declaring:  (a) that Cap One's practice of denying the Grace Period to consumers who accept balance transfer offers violates the contracts between the parties; (b) that Cap One's practice of denying the Grace Period to consumers who accept balance transfer offers violates the CARD Act; and (c) that Cap One's practice of applying amounts in excess of a cardholder's minimum payment to balances carrying a higher interest rate violates the CARD Act.

G.     Award Plaintiff and the Classes the costs of this action, including the fees and costs of experts, together with reasonable attorneys' fees; and

H.     Grant Plaintiff and the Classes such other and further relief as this Court finds necessary and proper.

//

//

//

//

1

## JURY TRIAL DEMAND

2     Plaintiff demands trial by jury on her claims alleged.

3         DATED: October 19, 2012         HAGENS BERMAN SOBOL SHAPIRO LLP

4

5                               By:

                                Shana E. Scarlett (217895)

6                             715 Hearst Avenue, Suite 202

7                             Berkeley, CA 94710
                            Telephone: (510) 725-3000
                            Facsimile: (510) 725-3001

8                             shanas@hbsslaw.com

9                             Steve W. Berman
                            Ari Brown

10                             HAGENS BERMAN SOBOL SHAPIRO LLP
                            1918 Eighth Avenue, Suite 3300

11                             Seattle, Washington 98101
                            Telephone: (206) 623-7292

12                             Facsimile: (206) 623-0594
                            steve@hbsslaw.com

13                             ari@hbsslaw.com

14                             Jason A. Zweig
                            HAGENS BERMAN SOBOL SHAPIRO LLP

15                             One Penn Plaza, 36th Floor
                            New York, NY 10119

16                             Telephone: (212) 752-5455
                            Facsimile: (917) 210-3980

17                             jasonz@hbsslaw.com

18                             Harry Shulman
                            SHULMAN LAW

19                             44 Montgomery Street, Suite 3830
                            San Francisco, CA 94104-4811

20                             Telephone: (415) 901-0505
                            Facsimile: (415) 901-0506

21                             harry@shulmanlawfirm.com

22                             *Attorneys for Plaintiff*

23

24

25

26

27

28

# EXHIBIT A



# Credit Card Agreement for VISA Signature®
# and World MasterCard® in Capital One® Bank (USA), N.A.

There are two parts to this Credit Card Agreement: **Capital One Pricing Information** and the **Capital One Customer Agreement**. The **Pricing Information** shows a range of terms that includes both mail and online offers for new accounts available under this Agreement as of March 30, 2012. The combination of terms that could apply to you will differ depending on the specific card offer and on your creditworthiness at the time of application. Not all offers will contain introductory rates. The **Customer Agreement** contains important information related to Visa Signature and World MasterCard consumer credit cards issued by Capital One Bank (USA), N.A. Please visit www.capitalone.com to view our online credit card offers. If you are a current Capital One cardholder, please log in to your account if you would like to request the Credit Card Agreement for your account(s).

| CAPITAL ONE® PRICING INFORMATION | |
|---|---|
| **Annual Percentage Rate (APR) for Purchases** | Introductory rate of 0% for 12 months. <br><br> Non-introductory rates between 10.9% and 21.9%. <br><br> Some Purchase APRs may vary with the market based on changes in the Prime Rate. |
| **APR for Transfers** | Introductory rate of 0% for 12 months. <br><br> Non-introductory rates between 10.9% and 21.9%. <br><br> Transfer APRs may vary with the market based on changes in the Prime Rate. |
| **APR for Cash Advances** | 24.9%. <br><br> Cash Advance APRs may vary with the market based on changes in the Prime Rate. |
| **Penalty APR and When It Applies** | 29.4%. <br><br> Penalty APRs may vary with the market based on changes in the Prime Rate. <br><br> This APR may be applied to your account if you make a late payment. <br><br> **How Long Will the Penalty APR Apply?** If APRs are increased for a payment that is more than 60 days late, the Penalty APR will apply indefinitely unless you make the next six consecutive minimum payments on time following the rate increase. |
| **Paying Interest** | Your due date is at least 25 days after the close of each billing cycle. We will not charge interest on new purchases provided you have paid your previous balance in full by the due date each month. We will begin charging interest on cash advances and special transfers on the transaction date. |
| **Minimum Interest Charge** | If you are charged interest, the charge will be no less than $0.50. |

| | |
|---|---|
| **Annual Fee** | Between $0 and $59 annually. |
| **Transaction Fees** <br> • Transfer Fee <br> • Cash Advance Fee <br> • Foreign Transaction Fee | <br> 3% of the amount of each transfer. <br> Between $0 and the greater of either $10 or 3% of the amount of each cash advance. <br> None. |
| **Penalty Fees** <br> • Late Payment <br> • Over-the-Credit-Limit <br> • Returned Payment | <br> Up to $35. <br> $0. <br> Up to $35. |

**How We Will Calculate Balances:** We use a method called "average daily balance" (including new purchases). See *How Do You Calculate the Interest Charge?* below for more details.

**Loss of Introductory APR:** We may end your Introductory APR and apply the Penalty APR if you make a late payment.

### Things You Should Know About These Offers
#### Can You Change My Account Terms?
We can change the terms of your account as permitted by law. When required, we will send you notice before doing so.



**How Do You Calculate Variable Rates?**
Variable rates may change when the Prime Rate changes. We calculate variable rates by adding a percentage to the Prime Rate published in *The Wall Street Journal* on the 25th day of each month. If the *Journal* is not published on that day, then see the immediately preceding edition. If Prime changes, your new rate will take effect on your next billing period. If your offer discloses a variable rate that changes quarterly, your new rate will take effect on the first day of your January, April, July and October billing periods.
If the APR associated with an offer is variable, the APR will equal:
Non-introductory Purchase APR - Prime plus a margin between 7.65% and 18.65%.
Non-introductory Transfer APR - Prime plus a margin between 7.65% and 18.65%.
Cash Advance APR - Prime plus 21.65%.
Penalty APR - Prime plus 26.15%.

**What Are The Daily Periodic Rates Used To Calculate My Interest?**
The daily periodic rate for your Introductory Purchase APR would be 0%, Non-introductory Purchase APR would be between .02986% and .06%, Introductory Transfer APR would be 0%, Non-introductory Transfer APR between .02986% and .06%, Cash Advance APR .06822% and Penalty APR .08055%.

**How Can I Avoid Paying Interest Charges?**
Each month you pay your "New Balance" in full by the due date, you will have a minimum grace period of 25 days with no interest charge on all new 1) purchases, 2) balance transfers, 3) special purchases and 4) other charges. If you have been paying your account in full with no interest charges applied and you do not pay your next bill in full, prorated interest charges will be assessed. There is no grace period on cash advances, special transfers, or on any new transaction when there is an unpaid balance from a previous bill.

**How Is The Interest Charge Applied?**
Interest charges accrue from the 1) date of the transaction, 2) date the transaction is processed or 3) first calendar day of the billing period. Interest charges accrue on every unpaid amount until it is paid in full. This means you may owe interest charges even if you pay the entire "New Balance" one month, but did not do so for the previous month. Unpaid interest charges are added to the proper segment of your account.

**How Do You Calculate The Interest Charge?**
For each segment of your account, we calculate your total interest charge by multiplying your average daily balance by the daily periodic rate and multiplying the result by the number of days in the billing period. Due to rounding or a minimum interest charge, this calculation may vary slightly from the interest charge actually assessed.

We determine your daily periodic rate by dividing the corresponding Annual Percentage Rates by 365 and rounding to the nearest 1/100,000th of 1%, not to exceed the maximum allowed by applicable law. If the daily periodic rates and corresponding Annual Percentage Rates increase, the interest charge will increase and your minimum payment may be greater.

To determine your average daily balance: 1) add the daily balances together and 2) divide the sum by the number of days in the billing cycle.
To determine your daily balance: 1) take the beginning balance and add in new transactions and the periodic interest charge on the previous day's balance. 2) Subtract any payments and credits for that segment as of that day. However, if you paid your previous month's balance in full (or if your balance was zero or a credit amount), new transactions which post to your purchase or special purchase segments are not added to the daily balances. Also, transactions that are subject to a grace period are not added to the daily balances.

© 2012 Capital One. Capital One is a federally registered service mark. All rights reserved. Products and services offered by Capital One Bank (USA), N.A. Capital One supports information privacy protection: see our website at www.capitalone.com. MasterCard is a registered trademark of MasterCard International Incorporated. Visa and Visa Signature are registered trademarks of Visa International Service Association and used under license.



# Capital One® Customer Agreement

## Welcome to Capital One.®

Thank you for opening a credit *Card Account* with us. This Customer Agreement ("Agreement") contains the terms for your Capital One credit *Card*.

## Some Definitions.

The meanings of the terms you see in italics appear in the **Glossary** Section. To make the Agreement easy to understand, we will also use the following personal pronouns:

"You," "your" and "yourself" mean each applicant and co-applicant for the *Account*; any person responsible for paying the *Account*; and anyone You authorize to use, access or service the *Account*. It also includes an *Authorized User* as defined in the **Glossary** Section.

"We," "us," "our" and "Capital One" mean Capital One Bank (USA), National Association; and its agents, authorized representatives, successors, and assignees.

## Account Documents.

Your *Account* with us is governed by the following documents:

(1) this document;
(2) all *Statements*;
(3) all rewards information and documentation if your *Account* has rewards;
(4) any Privacy Notices describing our limitations on sharing information about you with others;
(5) your *Card* benefits brochure which describes benefits provided by the *Payment Card Network* for your *Card* and *Account*. The most current version of your *Card* benefits brochure will replace all prior versions;
(6) the "Security" Agreement if you have a secured *Card*;
(7) all disclosures and materials provided to you before or when you opened your *Account*, including *Truth in Lending Disclosures*;
(8) all other documents and disclosures relating to your *Account* including those provided online; and
(9) any future changes we make to any of the above things.

Please read these carefully and keep them for future reference. An image of any of these can be used instead of the original.

## New Offers.

In the future, we might make new offers to you or forward offers from others that we think you might be interested in. These offers may have new or different terms and documentation for these offers will be provided when we make you the offer. If you accept the offer, your previously disclosed terms will still apply except as modified by the offer.

## Account Information.

We need information about you to manage your *Account*. The information we need includes:

(1) your legal name;
(2) a valid U.S. mailing address and residential address (if different);
(3) your date of birth;
(4) your social security number or other government identification number;
(5) your telephone number(s); and
(6) your employment and income information.

You must tell us when this information changes. Please update your address in the manner provided on your *Statement*. You may also update some of this information by logging onto your *Account* on our website or by calling one of our representatives at the telephone number provided on your *Statement* or on the back of your *Card*. We may require you to provide additional documents that are acceptable to us to verify this information or any changes. We maintain the right to restrict or close your *Account* if your information cannot be verified or if you do not provide additional information as requested.

## Your Revolving Credit Line and Spending.

Your *Account* features no over limit *Fees* for additional spending flexibility. While transactions in excess of your revolving credit line will not result in an over limit *Fee*, they will be immediately due and payable in your next periodic *Statement*. The revolving credit line is the maximum amount you can borrow and choose to repay over time. Transactions and *Fees* in excess of your revolving credit line may not be honored. If honored, however, they will be subject to this Agreement. Any transactions honored in excess of your revolving credit line will not result in an increase of your revolving credit line unless we expressly notify you otherwise. Your initial revolving credit line will be disclosed when your *Account* is opened. Unless required by law, we may increase or decrease your revolving credit line at any time without prior notice to you, may limit the credit available for *Cash Advances* or may take away your ability to obtain *Cash Advances*. Your current revolving credit line will be identified in your periodic *Statements*.

## Using Your Account.

You promise to follow the terms of this Agreement as long as your *Account* remains open or has a balance. Please sign the *Card* immediately when you receive it. The *Card* is valid during the dates provided on the front. The *Card* is our property, and you will return it to us or destroy it if we ask. You will take reasonable steps to prevent the unauthorized use of your *Card* and *Account*.

We are not responsible if anyone refuses to accept your *Card* for any reason. Also, we may reject any transaction for any reason. Unless we tell you otherwise, we will bill each transaction to the applicable *Segment* of your *Account* and apply it against your available credit limit for the *Account* and *Card* for that *Segment* in each *Billing Cycle*.

You may also obtain *Cash Advances* and *Transfers* if they are permitted for your *Account*. Unless we agree, you may not use a *Transfer* to transfer amounts from other *Accounts* with us or any other company within the Capital One organization.

You must not use, or try to use, the *Card* for any Internet gambling transactions or transactions that are illegal or not permitted by us. You will still be responsible if you do. In addition, these transactions will be subject to this Agreement, and you might have to reimburse the *Payment Card Network* and us for all damages and expenses.

From time to time, due to circumstances beyond our control (such as system failures, fires, floods, natural disasters or other unpredictable events) our services might be unavailable. When this happens, you might be unable to use your *Card* or obtain information about your *Account*. We will not be responsible or liable if this happens.



### Rewards.

Your *Account* might provide you with the opportunity to earn rewards. If it does, we will separately provide you with all information and terms about your rewards. We will include on your *Statements* all rewards you have earned. It might take up to two *Billing Cycles* for your earned rewards to appear on your *Statement*.

### Using Your Access Checks.

When we provide you with *Access Checks*, we will tell you whether we will treat them as purchases, *Balance Transfers*, *Cash Advances* or *Special Transfers*.

Only the person we designate may use *Access Checks*. *Access Checks* may not be used to pay any amount you owe us or any other company within the Capital One organization. We may reject and not pay any *Access Check* for any reason. Some examples of reasons why we may reject and not pay include: your *Account* is delinquent, charged-off, bankrupt, lost/stolen or closed; our fraud system prevents the offer fulfillment; your *Account* is overlimit; or the checks have expired. Any liability for our wrongful dishonor of an *Access Check* will be limited to your actual damages and will not exceed the amount of the *Access Check*.

When you use an *Access Check*, you will have fewer rights to dispute merchant transactions than with other uses of your *Card*. Please see the "Billing Rights Summary" part of your *Statement* and your other *Truth in Lending Disclosures* for more information.

### Stopping Payment of Access Checks.

You may request a stop payment on any *Access Check* by contacting us as provided on your *Statement*. We may charge you a *Fee* to stop payment as described in the **Interest Charges and Fees** section. If you call us to stop payment, you must also send to us a written request within 14 calendar days.

We will have a reasonable amount of time after your stop payment request to research the situation and complete it. We will not be responsible if we cannot complete the stop payment because the *Access Check* was already paid, you do not give us the information we asked for or the information you gave us was incorrect. If we cannot stop payment for these reasons, we may still keep the stop payment *Fee*.

Once we complete a stop payment, we do not have to release the stop payment order unless the same person asks us to. If we re-credit your *Account* after paying an *Access Check* following a valid stop payment order, you give us all of your rights against the payee or other holder of the paid *Access Check*. You also agree to help us in any actions we might later take against that person.

### Using a PIN.

We may give you a personal identification number (PIN). For security reasons, you might have to provide the PIN before you are able to complete some transactions using the *Card*.

With a PIN, you may use your *Card* to: (1) obtain cash from certain automated teller machines (ATM) or (2) make purchases at certain merchant or retailer point-of-sale devices (POS). You may do these things if the ATM or POS requires entry of a PIN and displays the logo of the *Payment Card Network* on your *Card*. We will treat all ATM transactions as *Cash Advances* and all POS transactions as purchases.

You should keep your PIN secure and not write it down, give it to anyone, or keep it with your *Card*. If you lose your *Card* or believe that someone has gained unauthorized access to your PIN, you must contact us immediately.

### Authorized Users.

You may ask us to add one or more *Authorized Users* with additional *Cards* on your *Account*. If we agree to your request, we will need certain information about the *Authorized User* to manage your *Account*. This will be the same information you provided about yourself as described in the **Account Information** Section. We may limit an *Authorized User's* ability to initiate certain transactions. If we do, we will tell you about these limitations before adding any new *Authorized User* on your *Account*.

Once we add an *Authorized User* to your *Account*, we may discuss your *Account* with them and provide them with *Account* information. You will be responsible for the *Authorized User's* use of the *Card* and your *Account* as well as anyone else they allow to use your *Card* or *Account*. This will be true even if you did not want, or agree to, the use.

### Removing an Authorized User.

If you want to remove an *Authorized User* from the *Account*, you must contact us as provided on your *Statement* and request their removal. We will have a reasonable amount of time after your request to research the situation and remove them. You also must immediately destroy all *Cards* in their possession and cancel all of their billing arrangements to the *Account*. We will not do this for you. During this time, you will be responsible for all amounts they charge to the *Account*. You will be responsible even if these amounts do not appear on the *Account* until later. An *Authorized User* may remove themselves from the *Account* upon request.

We may close your existing *Account* and/or issue a new *Card* with a new *Account* number.

### Your Promise to Pay.

You promise individually and jointly to pay us all amounts due on your *Account*. This includes amounts where you did not sign a purchase slip or other documents for the transaction. If you use your *Card* number without presenting your actual *Card* (such as for mail, telephone or Internet purchases), this will be treated the same way as if you used the *Card* in person. If you let someone else use your *Card*, you are responsible for all transactions that person makes. Your promise to pay us will apply to your estate if you die.

### Statements.

We will send you one *Statement* for all *Cards* on your *Account* unless the law does not require or permit us to send a *Statement*. *Statements* will be sent at the end of each *Billing Cycle* when your *Account* has a debit or credit balance of more than $1.00, or if we have charged any *Interest Charges* to your *Account*. Your *Statement* will show all transactions billed to your *Account* during the *Billing Cycle* along with other important *Account* information.

### Disputed Transactions.

You must inspect each *Statement* you receive and tell us about any errors or questions you have as described in the "Billing Rights Summary" part of your *Statement* and other *Truth in Lending Disclosures*. If you do not notify us as provided in those disclosures, we may assume that all information in the *Statement* is correct.

If you dispute a transaction made by you or someone else on your *Account*, and we later credit your *Account* for all or part of the disputed amount, you give us all of your rights against that other person. You also will:

(1) give us any merchandise or other purchases you received in connection with the disputed amount if we ask;

(2) not pursue any claim or reimbursement from the merchant and that other person; and

(3) help us pursue and get reimbursement from the merchant and that other person; your help includes giving us documents that we ask for and that are acceptable to us.

## Interest Charges and Fees.

We will charge *Interest Charges* and *Fees* to your *Account* as disclosed to you in your *Statements* and other *Truth in Lending Disclosures*. In general, *Interest Charges* begin to accrue from the day a transaction occurs. However, we will not charge you interest on any new balances posted to the purchase *Segment* of your *Account* provided you have paid your previous balance in full by the due date.

We will treat the following *Fees* as purchase transactions unless otherwise specified below. These *Fees* apply to your *Account* only if they are provided in your *Truth in Lending Disclosures*. We may increase your *Interest Charges* and *Fees* as described in the **Changes to Your Agreement** section or in your *Truth in Lending Disclosures*.

- Membership Fee. We may charge you this *Fee* as early as your first *Billing Cycle* or the first *Billing Cycle* after this *Fee* becomes effective. If it is an annual *Fee*, we may then charge it approximately once per year. If it is a monthly *Fee*, we may charge it once in each *Billing Cycle*. This *Fee* is payable in advance even if you do not use your *Account*.

- Late Payment Fee. We may charge you this *Fee* if we do not receive your payment in time for us to credit it by the due date shown on your *Statement*.

- Returned Payment Fee. We may charge you this *Fee* each time any payment you make to us is not paid by your financial institution for any reason, even if that institution later pays it.

- Stop Payment Fee. We may charge you this *Fee* each time you request us to stop payment on an *Access Check* or you renew an existing stop payment order as provided in the **Stopping Payment of Access Checks** section.

- Copying Fee. We may charge you a per-page *Fee* for copies of transaction documents or *Statements* unless they are required in resolving a billing dispute.

- Cash Advance Fee. We may charge you this *Fee* each time you obtain a *Cash Advance*. This *Fee* will be treated as a *Cash Advance* transaction.

- Transfer Fee. We may charge you this *Fee* each time you obtain a *Transfer*. This *Fee* will be treated either as a *Special Transfer* or purchase transaction depending on the *Segment* in which the *Transfer* posts.

## Transactions Made in Foreign Currencies.

If you make a transaction in a foreign currency, the *Payment Card Network* will convert it into a U.S. dollar amount. The *Payment Card Network* will use its currency conversion procedures in effect when it processes the transaction. The conversion rate in effect on the processing date might differ from the rate in effect on the transaction or posting date. We do not currently adjust the currency exchange rate or charge any additional currency conversion *Fees*.

## No Warranties.

Except as otherwise provided in the "Billing Rights Summary" part of your *Statements*, we are not responsible for any claim you might have regarding the purchases of goods or services made with your *Card*.

## Merchant Refunds.

If you are entitled to a refund for goods or services purchased with your *Card*, you will accept these refunds as credits to the purchase *Segment* of your *Account*. We do not control when a merchant sends us your refund. We will also have a reasonable amount of time after we receive your refund to process it.

## Minimum Payment.

Your *Statement* will provide instructions for making payments, including the amounts due and the due date for receiving your payment. If applicable, your *Statement* will also include a minimum payment amount. To avoid a late payment *Fee*, you must pay us at least this minimum payment amount by the due date provided in the *Statement*. If you exceed your revolving credit limit, we may request a higher minimum payment from you.

In addition to the minimum payment, you may pay all or part of the total balances on your *Account*. However, you must still pay at least the minimum payment amount each month, even if you paid greater than the minimum on the previous *Statement*. We will continue to charge *Interest Charges* during *Billing Cycles* when you carry a balance regardless of whether your *Statement* includes a minimum payment that is due. If your *Account* is 180 days past due, part of a bankruptcy proceeding or otherwise charges off, the entire balance is immediately due and payable.

## Making Payments.

Your payments must be in U.S. dollars from a U.S. deposit account and otherwise be acceptable to us. We do not accept cash payments through the mail. You may not make payments with funds from your *Account* or any other credit account with us or any other company within the Capital One organization.

## Mailed Payments.

You must mail payments to us at the address provided on your *Statement* or as otherwise instructed by us or our agents. We will credit it to your *Account* on the day we receive it, if:

(1) you send the payment coupon included with your *Statement* in the same envelope with your payment;

(2) you include your *Account* number on your payment; and

(3) your payment arrives at the address indicated on the payment coupon in our processing center by the time indicated on your *Statement*.

If your due date occurs on a day on which we do not receive payments, any payment received the next day which conforms to the above requirements will not be treated as late.

Please allow at least 7 days for postal delivery. Unless we or our agents specifically instruct you to remit payment in a different manner, payments received at any other location or in any other form might not be credited for up to 5 days. This might cause you to be charged late payment *Fees* and additional *Interest Charges*.

## Faster Payment Services.

We may make services available that allow you to make faster payments through a customer service representative using

a telephone, the Internet or other payment system. We will describe the terms for using these services before you use them. You do not have to use these other payment services, and we may charge you a *Fee* for using them. If we do, we will tell you the amount of the *Fee* at the time you request the service. We are not responsible if a payment made using our payment services is rejected or not paid. Even if it is, we may still keep the *Fee*.

If you give your *Account* number or other *Account* information to someone else to make a payment for you, we may provide *Account* information to them and process their payment as if you made it. We may refuse to accept any payment made by someone else for your *Account*. If we accept a payment made by someone else for your *Account*, you will be responsible for the payment made even if that payment is rejected or not paid.

## Payment Processing.
We may accept and process payments without losing any of our rights. Even if we credit your payment to your *Account*, we may delay the availability of credit until we confirm that your payment has cleared. We may resubmit and electronically collect returned payments. We may also adjust your *Account* as necessary to correct errors, to process returned and reversed payments, and to handle similar issues.

When you provide an *Item* as payment, you authorize us either to use information from your *Item* to make a one time electronic fund transfer from your deposit account or to process the payment as an *Item*. We will provide additional information about this process on your *Statement* or other documents we send you before your payment. You may contact us and ask that we not process your future *Items* in this way.

When you provide an *Item* as payment, it might also be converted into an electronic image and collected and returned electronically. These electronic images may also be converted to substitute checks. We will not be responsible if an *Item* you provide has physical features that when imaged result in it not being processed as you intended.

## How We Apply Your Payments.
We apply your minimum payments to lower Annual Percentage Rate balances before higher ones. We apply any portion of your payment, in excess of your minimum payment, to higher Annual Percentage Rate balances before lower ones.

## Items with Restrictive Words, Conditions or Instructions.
All *Items* that have restrictive words, conditions, limitations or special instructions added (including *Items* marked with the words "Paid in Full" or similar language) and all accompanying communications must be mailed to and received at: Capital One, P.O. Box 30285, Salt Lake City, UT 84130-0285. If you make your payment or send any accompanying communications to any other address, we may accept and process the payment without losing any of our rights.

## Credit Balances.
We may reject and return to you any payment that creates a credit balance on your *Account*. Any credit balance we allow will not be available until we confirm that your payment has cleared. We may reduce the amount of any credit balance by any new amounts billed to your *Account*. You may contact us as provided on your *Statement* and request a refund of any

available credit balance. If you contact us in writing, we will refund your credit balance within 7 *Business Days* from our receipt of your written request.

## Account Default.
We may consider you in default of your Agreement with us if:

(1) you do not make any payment when it is due;
(2) any payment you make is rejected, not paid or cannot be processed;
(3) you exceed, and fail to immediately repay the amount over, your revolving credit line by the following due date;
(4) a bankruptcy or other insolvency proceeding is filed by or against you;
(5) you die or are legally declared incompetent or incapacitated;
(6) we determine that you made a false, incomplete or misleading *statement* on any of your *Account* documentation, or you otherwise tried to defraud us;
(7) you do not comply with any term of this Agreement or any other agreement with us; or
(8) you permanently reside outside the United States.

For certain actions, including changing the rates and *Fees* on your *Account*, our options appear in our original offer materials when you opened your *Account*. Remember, paying the *Fees* charged in connection with a default will not by itself cure the default. In addition, if you are in default, we may take the following actions without notifying you, unless the law says that we must notify you:

(1) close or suspend your *Account*;
(2) lower your credit limits;
(3) increase your minimum payment;
(4) demand that you immediately pay the entire balances owing on your *Account* (for example, as described in the Minimum Payment section);
(5) continue to charge you *Interest Charges* and *Fees* as long as your balances remain outstanding; and/or
(6) pursue any other action against you that the law allows, which includes the filing of a lawsuit against you.

You must pay us all of our collection expenses, attorneys' fees and court costs unless the law does not allow us to collect these amounts.

## Communications.
We may contact you from time to time regarding your *Account*. We may contact you in any manner we choose unless the law says that we cannot. For example, we may:

(1) contact you by mail, telephone, email, fax, recorded message, text message or personal visit;
(2) contact you using an automated dialing or similar device ("Autodialer");
(3) contact you at your home and at your place of employment;
(4) contact you on your mobile telephone;
(5) contact you at any time, including weekends and holidays;
(6) contact you with any frequency;
(7) leave prerecorded and other messages on your answering machine/service and with others; and
(8) identify ourselves, your relationship with us and our purpose for contacting you even if others might hear or read it.

Our contacts with you about your *Account* are not unsolicited and might result from information we obtain from you or others. We may monitor or record any conversation or other



communication with you. Unless the law says we cannot, we may modify or suppress caller ID and similar services and identify ourselves on these services in any manner we choose. When you give us or we obtain your mobile telephone number, we may contact you at this number using an Autodialer and can also leave prerecorded and other messages. We may do these things whether we contact you or you contact us.

If you ask us to discuss your *Account* with someone else, you must provide us with documents that we ask for and that are acceptable to us.

## Credit Reports.
We may provide information about you and the *Account* to consumer (credit) reporting agencies and others as provided in our Privacy Notices. Information we provide might appear on your and the *Authorize Users'* credit reports. This could include negative information if you do not comply with the terms of this Agreement. We may obtain and use credit and income information about you from consumer (credit) reporting agencies and others as the law allows.

## Closing or Suspending Your Account.
You may ask us to close your *Account* by calling or writing us as described on your *Statement*. Your *Statement* will provide additional information about this process, and we may also separately provide you with additional details after your request. This might include payment information. If you use your *Card* or charges post to your *Account* after you ask us to close it, we may keep it open or reopen it.

We may close or suspend your *Account* and your right to obtain credit from us. We may do this at any time and for any reason, permitted by law, even if you are not in default. A suspension of your *Account* might be permanent or temporary.

If your *Account* is closed or suspended for any reason, you must stop using your *Card*. You must also cancel all billing arrangements to the *Account*. We will not do this for you. If we close or permanently suspend your *Account*, you must also destroy all *Cards*. You must still pay us all amounts you owe on the *Account*, even if they are charged after your *Account* is closed or suspended.

## Lost or Stolen Card.
You will take reasonable steps to prevent the unauthorized use of your *Card* and *Account*. If your *Card* is lost or stolen or if someone else might be using it without your permission, you must tell us at once. You may tell us by calling the telephone number on the back of your *Card* or on your *Statement* or by writing us at the address on your *Statement*. You will not be responsible for charges made to your *Account* that are found by us to be unauthorized. If we reimburse your *Account* for unauthorized charges made using your *Card*, you will help us investigate, pursue and get reimbursement from the wrongdoer. Your help includes giving us documents that we ask for and that are acceptable to us.

## Changes to Your Agreement.
At any time, we may add, delete or change any term of this Agreement unless the law prohibits us from doing so. We will give you notice of any changes as required by law. If we do notify you of changes, we will send you a separate notice or inform you on your *Statement*. We may send this notice to you electronically as permitted by law. Our notice will tell you when and how the changes will take effect and describe any rights you have in connection with the changes.
Your variable Annual Percentage Rates (if applicable) can go

up or down as the index for the rate goes up or down. If we increase your *Interest Charges* for any other reason we will notify you in writing. If we increase your *Fees* or other terms of your *Account* we will notify you in writing and inform you of your options in advance, including the right to opt out of some of these changes.

We may increase your *Interest Charges* for new transactions and your *Fees* after the first year of the *Account*. Also, if your payment is not received within 60 days after the payment due date, we may increase your *Interest Charges* and *Fees* for existing balances and new transactions at any time. We may change any other terms of your *Account* at any time.

## The Law that Applies to Your Agreement.
We make decisions to grant credit and issue you a *Card* from our offices in Virginia. This Agreement will be interpreted using Virginia law. Federal law will be used when it applies.

You waive any applicable statute of limitations as the law allows. Otherwise, the applicable statute of limitations period for all provisions and purposes under this Agreement (including the right to collect debt) will be the longer period provided by Virginia or the jurisdiction where you live. If any part of this Agreement is found to be unenforceable, the remaining parts will remain in effect.

## Waiver.
We will not lose any of our rights if we delay taking any action for any reason or if we do not notify you. For example, we may waive your *Interest Charges* or *Fees* without notifying you and without losing our right to charge them in the future. We may always enforce our rights later and may take other actions not listed in this Agreement if the law allows them. You do not have to receive notice from us of any waiver, delay, demand or dishonor. We may proceed against you before proceeding against someone else.

## Assignment.
This Agreement will be binding on, and benefit, any of your and our successors and assigns.

You may not transfer your *Account* or your Agreement to someone else without our written permission.

We may transfer your *Account* and this Agreement to another company or person without your permission and without prior notice to you. They will take our place under this Agreement. You must pay them and perform all of your obligations to them and not us. If you pay us after you are informed or learn that we have transferred your *Account* or this Agreement, we can handle your payment in any way we think is reasonable. This includes returning the payment to you or forwarding the payment to the other company or person.

## Glossary.

• **"Access Check"** means any check we send to you to access your *Account*. We may also refer to an *Access Check* as a "convenience check" or a "purchase check."

• **"Account"** means your *Card Account* with us.

• **"Authorized User"** means one or more persons who may use the *Card* but is not responsible for the repayment of the *Account*.

• **"Balance Transfer"** means a *Transfer* posted to the purchase *Segment* of your *Account* unless otherwise described in your *Truth in Lending Disclosures*.



- **"Billing Cycle"** means a period of time that might vary in length but is approximately 30 days. The specific period of time is described on each *Statement*. However, you will have a *Billing Cycle* even if a *Statement* is not required. We will often specify a *Billing Cycle* by the month in which its closing date occurs as provided on the *Statement*. For example, a "March *Billing Cycle*" will have a closing date in March. We may also refer to a *Billing Cycle* as a "Billing Period." If your *Account* balance has charged off, we may switch to quarterly *Billing Cycles* to your *Account*.

- **"Business Day"** means any day in which Capital One's offices are open for the processing of payments and credits.

- **"Card"** means any Capital One credit *Card* associated with your *Account*, which includes all renewals and substitutions. It also means any other access device for your *Account* we give you that allows you to obtain credit, including any *Account* number and any *Access Check*.

- **"Cash Advance"** means using the *Card* to obtain loans in cash or things we consider cash equivalents. Cash equivalents include wire transfers, travelers' checks, money orders, foreign currency, lottery tickets, gaming chips and wagers. *Cash Advances* are posted to the *Cash Advance Segment* of your *Account* and not to your purchase *Segment*.

- **"Fees"** means charges imposed on your *Account* that are not based on the Annual Percentage Rates.

- **"Interest Charges"** means any charges to your *Account* based on the application of Annual Percentage Rates.

- **"Item"** means a check, draft, money order or other negotiable instrument you use to pay your *Account*. This includes any image of these instruments. This does not include an *Access Check*.

- **"Payment Card Network"** means Visa Inc., MasterCard International Incorporated, or any other network provider displayed on the *Card*.

- **"Segments"** means the different parts of your *Account* we may establish that are subject to unique pricing, grace periods or other terms. We create these parts of your *Account* for such things as your purchases, *Cash Advances* and *Special Transfers*.

- **"Special Transfer"** means a *Transfer* posted to the *Special Transfer Segment* of your *Account* and not to your purchase *Segment*.

- **"Statement"** means a document or information we provide to you showing *Account* information including, among other things, transactions made to your *Account* during a *Billing Cycle*. We might also refer to your *Statement* as a "Periodic *Statement*" or a "Billing *Statement*."

- **"Transfers"** means balances transferred from other *Accounts* to this *Account* and includes *Balance Transfers* and *Special Transfers*.

- **"Truth in Lending Disclosures"** means any *Account* information we provide to you that is required by the federal Truth in Lending Act and Regulation Z. These include your application and solicitation disclosures, *Account* opening disclosures, subsequent disclosures, *Statements* and change in terms notices.

© 2012 Capital One
Capital One is a federally registered service mark.
All rights reserved.



 **EXHIBIT A PAGE 8**   4/5/12  4:21 PM

# EXHIBIT B



## CUSTOMER AGREEMENT

Welcome to Capital One ........................................................... 1
Some Definitions .................................................................... 1
Account Documents ............................................................... 1
New Offers ........................................................................ 1-2
Account Information ............................................................... 2
Your Revolving Credit Line and Spending ................................. 2-3
Using Your Account ............................................................... 3
Rewards ........................................................................... 3-4
Using Your Access Checks ...................................................... 4
Stopping Payment of Access Checks ....................................... 4-5
Using a PIN ........................................................................ 5
Authorized Users .................................................................. 5
Removing an Authorized User ............................................... 5-6
Your Promise to Pay .............................................................. 6
Statements ....................................................................... 6-7
Disputed Transactions .......................................................... 7-8
Interest Charges and Fees ...................................................... 8
Transactions Made in Foreign Currencies ................................... 8
No Warranties ..................................................................... 8
Merchant Refunds .............................................................. 8-9
Minimum Payment ............................................................... 9
Making Payments .............................................................. 9-10
Mailed Payments ................................................................ 10
Faster Payment Services .................................................... 10-11
Payment Processing ............................................................. 11
How We Apply Your Payments ............................................... 11
Items with Restrictive Words, Conditions, or Instructions ............ 11
Credit Balances .................................................................. 11
Account Default .............................................................. 11-12
Communications ............................................................. 12-13
Credit Reports ................................................................... 13
Closing or Suspending Your Account ..................................... 13-14
Lost or Stolen Card ............................................................. 14
Changes to Your Agreement ................................................. 14
The Law that Applies to Your Agreement ................................. 15
Waiver ............................................................................ 15
Assignment ...................................................................... 15
Glossary ....................................................................... 15-17

EXHIBIT B PAGE 1

**Welcome to Capital One.®**
Thank you for opening a credit Card Account with us. This Customer Agreement ("Agreement") contains the terms for your Capital One credit Card.

**Some Definitions.**
The meanings of the terms you see in italics appear in the Glossary Section. To make the Agreement easy to understand, we will also use the following personal pronouns:

"You", "your" and "yourself" mean each applicant and co-applicant for the Account; any person responsible for paying the Account; and anyone You authorize to use, access or service the Account. It also includes an Authorized User as defined in the Glossary Section. "We", "us," "our" and "Capital One" mean Capital One Bank (USA), National Association; and its agents, authorized representatives, successors, and assignees.

**Account Documents.**
Your Account with us is governed by the following documents:

(1) this document;
(2) all Statements;
(3) all rewards information and documentation if your Account has Rewards;
(4) any Privacy Notices describing our limitations on sharing information about you with others;
(5) Your Card benefits brochure which describes benefits provided by the Payment Card Network for your Card (note, if You do not receive the most recent version, the benefits brochure will control); any prior versions of the benefits brochure will have no value;
(6) the "Security" Agreement if you have a secured Card;
(7) all disclosures and materials provided to you before or when you opened your Account, including Truth in Lending Disclosures;
(8) all other documents and disclosures relating to your Account, including those provided online; and
(9) any future changes we make to any of the above things.

Please read these carefully and keep them for future reference. An image of any of these can be used instead of the original.

**New Offers.**
In the future, we might make new offers to your or forward offers from others that we think you might be interested in. These offers may have new or different terms and documentation for these offers will be provided when we make you the offer. If you accept the offer, your previously disclosed terms will still apply except as modified by the offer.

**Account Information.**
We need information about you to manage your Account. The information we need includes:

(1) your legal name;
(2) a valid U.S. mailing address and residential address (if different);
(3) your date of birth;
(4) your social security number or other government identification number;
(5) your telephone number(s); and
(6) your employment and income information.

You must tell us when this information changes. Please update your address in the manner provided on your Statement. You may also update some of this information by logging onto your Account on our website or by calling one of our representatives at the telephone number provided on your Statement or on the back of your Card. We may require you to provide additional documents that are acceptable to us to verify this information or any changes. We maintain the right to restrict or close your Account if you do not provide information to us when we request it or if you do not provide additional information as requested.

**Your Revolving Credit Line and Spending.**
Your Account features no over limit Fees for additional spending flexibility. While transactions in excess of your revolving credit line will not result in an over limit Fee, they will be immediately due and payable in your next periodic Statement. The revolving credit line is the maximum amount you can borrow and choose to repay over time. Transactions and Fees in excess of your revolving credit line may not be honored. If honored, however, they will be subject to this Agreement. Any transactions honored in excess of your revolving credit line will not result in an increase of your revolving credit line unless we expressly notify you otherwise. Your initial revolving credit line will be disclosed when your Account is opened. Unless required by law, we may increase or decrease your revolving credit line at any time without prior notice to you; you may limit the credit available for Cash Advances or may take away your ability to obtain Cash Advances. Your current revolving credit line will be identified in your periodic Statements.

**Using Your Account.**
You promise to follow the terms of this Agreement as long as your Account remains open or has a balance. Please sign the Card immediately when you receive it. The Card is valid during the dates provided on the front. The Card is our property, and you will return it to us or destroy it if we ask. You will take reasonable steps to prevent the unauthorized use of your Card and Account.

We are not responsible if anyone refuses to accept your Card for any reason. We also may decline any particular transaction for any reason. Unless we tell you otherwise, we will bill each transaction to the applicable Segment of your Account and apply it against your available credit limit for the Account and Card for that Segment in each Billing Cycle.

You may also obtain Cash Advances and Transfers if they are permitted for your Account. Unless we agree, you may not use a Transfer to transfer amounts from other Accounts with us or any other company within the Capital One organization.

You must not use or try to use, the Card for any Internet gambling transactions or transactions that are illegal or not permitted by us. You will still be responsible if you do. In addition, those transactions will be subject to this Agreement, and you might have to reimburse the Payment Card Network and us for all damages and expenses.

From time to time, due to circumstances beyond our control (such as system failures, fires, floods, natural disasters or other unpredictable events) our services might be unavailable. When this happens, you might be unable to use your Card or obtain information about your Account. We will not be responsible or liable if this happens.

**Rewards.**
Your Account might provide you with the opportunity to earn rewards. If it does, we will separately provide you with all information and terms about your rewards.

We will include on your Statements all rewards you have earned. It might take up to two *Billing Cycles* for your earned rewards to appear on your Statement.

**Using Your Access Checks**
When we provide you with Access Checks, we will tell you whether we will treat them as purchases, *Balance Transfers*, *Cash Advances* or *Special Transfers*.

Only the person we designate may use *Access Checks*. *Access Checks* may not be used to pay any amount you owe us or any other company within the Capital One organization. We may reject and not pay any *Access Check* for any reason. Some examples of reasons why we may reject and not pay include: your *Account* is delinquent, charged-off, bankrupt, lost/stolen or closed; our fraud system prevents the offer fulfillment; your *Account* is overlimit; or the checks have expired. Any liability for our wrongful dishonor of an *Access Check* will be limited to your actual damages and will not exceed the amount of the *Access Check*.

When you use an *Access Check*, you will have fewer rights to dispute merchant transactions than with other uses of your *Card*. Please see the "Billing Rights Summary" part of your Statement and your other *Truth in Lending Disclosures* for more information.

**Stopping Payment of Access Checks**
You may request a stop payment on any *Access Check* by contacting us as provided on your Statement. We may charge you a *Fee* to stop payment as described in the *Interest Charges and Fees* section. If you call us to stop payment, you must also send to us a written request within 14 calendar days.

We will have a reasonable amount of time after your stop payment request to research the situation and complete it. We will not be responsible if we cannot complete the stop payment because the *Access Check* was already paid, you do not give us the information we asked for or the information you gave us was incorrect. If we cannot stop payment for these reasons, we may still keep the stop payment *Fee*.

Once we complete a stop payment, we do not have to release the stop payment order unless the same person asks us to. If we re-credit your *Account* after paying an

4

*Access Check* following a valid stop payment order, you give us all of your rights against the payee or other holder of the paid *Access Check*. You also agree to help us in any actions we might later take against that person.

**Using a PIN.**
We may give you a personal identification number (PIN). For security reasons, you might have to provide the PIN before you are able to complete some transactions using the *Card*.

With a PIN, you may use your *Card* to: (1) obtain cash from certain automated teller machines (ATM) or (2) make purchases at certain merchant or retailer point-of-sale devices (POS). You may do both of these things if the ATM or POS requires entry of a PIN and displays the logo of the Payment Card Network on your *Card*. We will treat all ATM transactions as *Cash Advances* and all POS transactions as purchases.

You should keep your PIN secure and not write it down, give it to anyone, or keep it with your *Card*. If you lose your *Card* or believe that someone has gained unauthorized access to your PIN, you must contact us immediately.

**Authorized Users**
You may ask us to add one or more *Authorized Users* with additional *Cards* on your *Account*. If we agree to your request, we will need certain information about the *Authorized User* to manage your *Account*. This will be the same information you provided about yourself, as described in the *Account Information* Section. We may limit an *Authorized User's* ability to initiate certain transactions. If we do, we will tell you about these limitations before adding any new *Authorized User* on your *Account*.

Once we add an *Authorized User* to your *Account*, we may discuss your *Account* with them and provide them with *Account* information. You will be responsible for the *Authorized User's* use of the *Card* and your *Account* as well as anyone else they allow to use your *Card* or *Account*. This will be true even if you did not want, or agree to, the use.

**Removing an Authorized User.**
If you want to remove an *Authorized User* from the *Account*, you must contact us as provided on your

5

Statement and request their removal. We will have a reasonable amount of time after your request to research the situation and remove them. You also must immediately destroy all *Cards* in your possession and cancel all of their billing arrangements to the *Account*. We will not do this for you. During this time, you still will be responsible for all amounts they charge to the *Account*. You will be responsible even if these amounts do not appear on the *Account* until later. An *Authorized User* may remove themselves from the *Account* upon request.

We may close your existing *Account* and/or issue a new *Card* with a new *Account* number.

**Your Promise to Pay.**
You promise individually and jointly to pay us all amounts due on your *Account*. This includes amounts where you did not sign a purchase slip or other documents for the transaction. If you use your *Card* number without presenting your actual *Card* (such as for mail, telephone or Internet purchases), this will be treated the same way as if you used the *Card* in person. If you let someone else use your *Card*, you are responsible for all transactions that person makes. Your promise to pay us will apply to your estate if you die.

**Statements.**
We will send you one *Statement* for all *Cards* on your *Account* unless the law does not require or permit us to send a *Statement*. *Statements* will be sent at the end of each *Billing Cycle* when your *Account* has a debit or credit balance of more than $1.00; or if we have charged any *Interest Charges* to your *Account*. Your *Statement* will show all transactions billed to your *Account* during the *Billing Cycle* along with other important *Account* information.

**Disputed Transactions.**
You must inspect each *Statement* you receive and tell us about any errors or questions you have as described in the "Billing Rights Summary" part of your *Statement* and other *Truth in Lending Disclosures*. If you do not notify us as provided in those disclosures, we may assume that all information in the *Statement* is correct.

If you dispute a transaction made by you or someone else on your *Account*, and we later credit your *Account* for all or part of the disputed amount, you give us all of

6

your rights against that other person. You also will:

(1) give us any merchandise or other purchases you received in connection with the disputed amount if we ask;

(2) not pursue any claim or reimbursement from the merchant and that other person; and

(3) help us pursue and get reimbursement from the merchant and that other person. You help includes giving us documents that we ask for and that are acceptable to us.

### Interest Charges and Fees.

We will charge *Interest Charges* and fees to your *Account* as disclosed to you in your *Statements* and other *Truth in Lending Disclosures*. In general, *Interest Charges* begin to accrue from the day a transaction occurs. However, we will not charge you *Interest* on any new balances posted to the purchase *Segment* on your *Account* if you provided you have paid your previous balance in full by the due date. We will treat the following fees as purchase transactions unless otherwise specified below. These fees apply to your *Account* only if they are provided in your *Truth in Lending Disclosures*. We may increase your *Interest Charges* and *Fees* as described in the **Changes to Your Agreement** section or in your *Truth in Lending Disclosures*.

• **Membership Fee.** We may charge you this Fee as early as your *Billing Cycle* or the first *Billing Cycle* after this *Fee* becomes due. If it is an annual *Fee*, we may then charge it approximately once in each *Billing Cycle*. This *Fee* is a monthly *Fee*, we may charge it once in each *Billing Cycle*. This *Fee* is payable in advance even if you do not use your *Account*.

• **Late Payment Fee.** We may charge you this *Fee* if we do not receive your payment in time for us to credit it by the due date shown on your *Statement*.

• **Returned Payment Fee.** We may charge you this *Fee* each time any payment you make to us is not paid by your financial institution for any reason, even if that institution later pays it.

• **Stop Payment Fee.** We may charge you this *Fee* each time you request us to stop payment on an *Access Check* or you renew an existing stop payment order as provided in the **Stopping Payment of Access Checks** section.

• **Copying Fee.** We may charge you a *per-page Fee* for copies of transaction documents or *Statements* unless they are required in resolving a billing dispute.

• **Cash Advance Fee.** We may charge you a *Cash Advance*. This *Fee* will be treated as a *Cash Advance* transaction.

• **Transfer Fee.** We may charge you this *fee* each time you obtain a *Transfer*. This *Fee* will be treated either as a *Special Transfer* or will be treated depending on the *Segment* in which the *Transfer* posts.

### Transactions Made in Foreign Currencies.

If you make a transaction in a foreign currency, the *Payment Card Network* will convert it into a U.S. dollar amount. The *Payment Card Network* will use its currency conversion procedures in effect when it processes the transaction. The conversion rate in effect on the processing date might differ from the rate in effect on the transaction or posting date. We do not currently adjust the currency exchange rate or charge any additional currency conversion *fees*.

### No Warranties.

Except as otherwise provided in the "Billing Rights Summary" part of your *Statements*, we are not responsible for any claim you might have regarding the purchases of goods or services made with your *Card*.

### Merchant Refunds.

If you are entitled to a refund for goods or services purchased with your *Card*, you will accept these refunds as credits to the purchase *Segment* of your *Account*. We do not control when a merchant sends us your refund. We will also have a reasonable amount of time after we receive your refund to process it.

### Minimum Payment.

Your *Statement* will provide instructions for making payments, including the amounts due and the due date for receiving your payment. If applicable, your *Statement* will also include a minimum payment amount. To avoid a late payment *Fee*, you must pay us at least this minimum payment amount by the due date provided in the *Statement*. If you exceed your revolving credit limit, we may request a higher minimum payment from you.

In addition to the minimum payment, you may pay all or part of the total balances on your *Account*. However, you must still pay at least the minimum payment amount each month, even if you paid greater than the minimum on the previous *Statement*. We will continue to charge *Interest Charges* during *Billing Cycles* when you carry a balance regardless of whether your *Statement* includes a minimum payment that is due. If your *Account* is 180 days past due, part of a bankruptcy proceeding or otherwise charges off, the entire balance is immediately due and payable.

### Making Payments.

Your payments must be in U.S. dollars from a U.S. deposit account. We will otherwise be acceptable to us. We do not accept cash payments through the mail. You may not make payments with funds from your *Account* or any other credit account with us or any other company within the *Capital One* organization.

### Mailed Payments.

You must mail payments to us at the address provided on your *Statement* or as otherwise instructed by us or our agents. We will credit it to your *Account* on the day we receive it, if:

(1) you send the payment coupon included with your *Statement* in the same envelope with your payment;

(2) you include your *Account* number on your payment; and

(3) your payment arrives at the address indicated on the payment coupon in our processing center by the time indicated on your *Statement*.

If your due date occurs on a day on which we do not receive payments, any payment received the next day which conforms to the above requirements will not be treated as late.

Please allow at least 7 days for postal delivery. Unless we or our agents specifically instruct you to remit payment in a different manner, payments received at any other location or in any other form might not be credited for up to 5 days. This might cause you to be charged late payment *Fees* and additional *Interest Charges*.

**Faster Payment Services.**

We may make services available that allow you to make faster payments through a customer service representative using a telephone, the Internet or other payment system. We will describe the terms for using these services before you use them. You do not have to use these other payment services, and we may charge you a Fee for using them. If we do, we will tell you the amount of the Fee at the time you request the service. We are not responsible if a payment made using our payment services is rejected or not paid. Even if it is, we may still keep the Fee.

If you give your Account number or other Account information to someone else to make a payment for you, we may process the payment as if you authorized it. If you provide your Account information to them and they process their payment as if you made it, it may be too late for your to cancel the payment. If you want to refuse to accept any payment made by someone else for your Account. If we accept a payment made by someone else made even if that payment is rejected or not paid.

**Payment Processing.**

We may accept and process payments without losing any of our rights. Even if we credit your payment to your Account, we may delay the availability of credit until we confirm that your payment has cleared. We may resubmit and electronically collect returned payments. We may also adjust your Account as necessary to correct errors, to process returned and reversed payments, and to handle similar issues.

When you provide an item as payment, you authorize us either to use information from your item to make a one time electronic fund transfer from your deposit account or to process the payment as an item. We will provide additional information about this process on your Statement or other documents we send you before your payment. You may contact us and ask that we not process your future items in this way.

When you provide an item as payment, it might also be converted into an electronic image and collected and also be converted to substitute checks. We will not be responsible if an item you provide has physical features that when imaged result in it not being processed as you intended.

**10**

**How We Apply Your Payments.**

We apply your minimum payments to lower Annual Percentage Rate balances before higher ones. We apply any portion of your payment, in excess of your minimum payment, to higher Annual Percentage Rate balances before lower ones.

**Items with Restrictive Words, Conditions or Instructions.**

All items that have restrictive words, conditions, limitations or special instructions added (including items marked with the words "Paid in Full" or similar language) and all accompanying communications must be mailed to and received at Capital One, P.O. Box 30285, Salt Lake City, UT 84130-0285. If you make your payment or send any accompanying communications to any other address, we may accept any payment and process the payment without losing any of our rights.

**Credit Balances.**

We may reject and return to you any payment that creates a credit balance on your Account. Any credit balance we allow will not be available until we confirm that your payment has cleared. We may reduce the amount of any credit balance by any new amounts billed to your Account. You may contact us as provided on your Statement and request a refund of any available credit balance. If you contact us in writing, we will refund your credit balance within 7 Business Days from our receipt of your written request.

**Account Default.**

We may consider you in default of your Agreement with us if:

(1) you do not make any payment when it is due;

(2) any payment you make is rejected, not paid or cannot be processed;

(3) you exceed, and fail to immediately repay the amount over, your revolving credit line by the following due date;

(4) a bankruptcy or other insolvency proceeding is filed by or against you;

(5) you die or are legally declared incompetent or incapacitated;

(6) we determine that you made a false, incomplete or misleading statement on any of your Account

**11**

documentation, or you otherwise tried to defraud us;

(7) you do not comply with any term of this Agreement or any other agreement with us; or

(8) you permanently reside outside the United States.

For certain actions, including changing the rates and Fees on your Account, our options appear in our original offer materials when you opened your Account. Remember, paying the Fees charged, in connection with a default will not by itself cure the default. In addition, if you are in default, we may take the following actions without notifying you, unless the law says that we must notify you:

(1) close or suspend your Account;

(2) lower your credit limit;

(3) increase your minimum payment;

(4) demand that you immediately pay the entire balances owing on your Account (for example, as described in the Minimum Payment section);

(5) continue to charge you Interest Charges and Fees as long as your balances remain outstanding; and/or

(6) pursue any other action against you that the law allows, which includes the filing of a lawsuit against you.

You must pay us all of our collection expenses, attorneys' fees and court costs unless the law does not allow us to collect these amounts.

**Communications.**

We may contact you, from time to time regarding your Account. We may contact you in any manner we choose unless the law says that we cannot. For example, we may:

(1) contact you by mail, telephone, email, fax, recorded message, text message or personal visit;

(2) contact you using an automated dialing or similar device ("Autodialer");

(3) contact you at your home and at your place of employment;

(4) contact you on your mobile telephone;

(5) contact you at any time, including weekends and holidays;

(6) contact you with any frequency;

(7) leave prerecorded and other messages on your answering machine/service and with others; and

**12**

(8) Identify ourselves, your relationship with us and our purpose for contacting you even if others might hear or read it.

Our contacts with you about your Account are not unsolicited telephone sales calls. Information we obtain from you or others. We may from time to time... conversation or other communication with you. Unless the law says we cannot, we may modify or suppress caller ID and similar services and identify ourselves on these services in any manner we choose. When you give us or we obtain your mobile telephone number, we may contact you at this number using an Autodialer and can also leave prerecorded and other messages. We may do these things whether we contact you or you contact us.

If you ask us to discuss your Account with someone else, you must provide us with documents that we ask for and that are acceptable to us.

## Credit Reports.

We may provide information about you and the Account to consumer (credit) reporting agencies and others as provided in our Privacy Notices. Information we provide might appear on your and the Authorize Users' credit reports. This could include negative information if you do not comply with the terms of this Agreement. We may obtain and use credit and income information about you from consumer (credit) reporting agencies and others as the law allows.

## Closing or Suspending Your Account.

You may ask us to close your Account by calling or writing us as described on your Statement. Your Statement will provide additional information about this process, and we may also separately provide you with additional details after your request. This might include payment information. If you use your Card or charges post to your Account after you ask us to close it, we may keep it open or reopen it.

We may close or suspend your Account and your right to obtain credit from us. We may do this at any time and without reason, permitted by law, even if you are not in default. The suspension of your Account might be permanent or temporary.

all billing arrangements to the Account. We will not do this for you. If we close or permanently suspend your Account, you must also destroy all Cards. You must still pay us all amounts you owe on the Account, even if they are charged after your Account is closed or suspended.

## Lost or Stolen Card

You will take reasonable steps to prevent the unauthorized use of your Card and Account. If your Card is lost or stolen, or if someone else might be using it without your permission, you must tell us at once. You may tell us by calling the telephone number on the back of your Card or on your Statement or by writing us at the address on your Statement. You will not be responsible for charges made to your Account that are found by us to be unauthorized. If we reimburse your Account for unauthorized charges made using your Card, you will help us investigate, pursue and get reimbursement from the wrongdoer. Your help includes giving us documents that we ask for and that are acceptable to us.

## Changes to Your Agreement.

At any time, we may add, delete, or change any terms of this Agreement unless the law prohibits us from doing so. We will give you notice of any changes as required by law. If we do not notify you of changes, we will send you a separate notice or inform you on your Statement. We may send this notice to you electronically as permitted by law. Our notice will tell you when and how the changes will take effect and describe any rights you have in connection with the changes.

Your variable Annual Percentage Rates (if applicable) can go up or down as the Index for the rate goes up or down. If we increase your Interest Charges for any other reason we will notify you in writing. If we increase your Fees or other terms of your Account we will notify you in writing and inform you of your options in advance, including the right to opt out of some of these changes.

We may increase your Interest Charges for new transactions and your Fees after the first year of the Account. Also, if your payment is not received within 60 days after the payment due date, we may increase your Interest Charges and Fees for existing balances and new

## The Law that Applies to Your Agreement.

We make decisions to grant credit and issue you a Card from our offices in Virginia. This Agreement will be interpreted using Virginia law. Federal law will be used when it applies.

You waive any applicable statute of limitations as the law allows. Otherwise, the applicable statute of limitations period for all provisions and purposes under this Agreement (including the right to collect debt) will be the longest one provided by Virginia or the jurisdiction where you live. If any part of this Agreement is found to be unenforceable, the remaining parts will remain in effect.

## Waiver.

We will not lose any of our rights if we delay taking any action for any reason or if we do not notify you. For example, we may waive your Interest Charges or Fees without notifying you and without losing our right to charge them in the future. We may always enforce our rights later and may take other actions not listed in this Agreement. If the law allows them. You do not have to receive notice from us of any waiver, delay, demand or dishonor. We may proceed against you before proceeding against someone else.

## Assignment.

This Agreement will be binding on, and benefit, any of your and our successors and assigns.

You may not transfer your Account or your Agreement to someone else without our written permission.

We may transfer your Account and this Agreement to another company or person without your permission and without prior notice to you. They will take your place under this Agreement. You must pay them and perform all of your obligations to them and not us. If you pay us after you are informed or learn that we have transferred your Account or this Agreement, we can have the right... payment in any way we think is reasonable. This includes returning the payment to you or forwarding the payment to the other company or person.

## Glossary.



## CUSTOMER AGREEMENT

Welcome to Capital One ............................................. 1
Some Definitions ..................................................... 1
Account Documents ................................................. 1
New Offers ........................................................... 1-2
Account Information .................................................. 2-3
Your Revolving Credit Line and Spending ....................... 3
Using Your Account ................................................. 3
Rewards ............................................................... 3-4
Cash or Access Checks ............................................. 4
Stopping Payment of Access Checks ............................. 4-5
Using a PIN ........................................................... 5
Authorized Users .................................................... 5
Removing an Authorized User ..................................... 5-6
Your Promise to Pay ................................................. 6
Statements ............................................................ 6
Disputed Transactions .............................................. 6-7
Interest Charges and Fees ......................................... 7-8
Transactions Made in Foreign Currencies ....................... 8
No Warranties ........................................................ 8
Merchant Refunds ................................................... 8-9
Minimum Payment .................................................... 9
Making Payments .................................................... 9-10
Mailed Payments ..................................................... 10
Faster Payment Services ............................................ 10
Payment Processing .................................................. 10-11
How We Apply Your Payments .................................... 11
Items with Restrictive Words, Conditions, or Instructions ... 11
Credit Balances ...................................................... 11
Account Default ...................................................... 11-12
Communications ..................................................... 12
Credit Reports ....................................................... 12-13
Closing or Suspending Your Account ............................ 13
Lost or Stolen Card .................................................. 13-14
Changes to Your Agreement ....................................... 14
The Law that Applies to Your Agreement ....................... 14
Waiver ................................................................. 15
Assignment ........................................................... 15
Glossary ............................................................... 15-17

• **"Payment Card Network"** means Visa Inc., MasterCard International Incorporated, or any other network provider displayed on the Card.

• **"Segments"** means the different parts of your Account we may establish that are subject to unique pricing, grace periods or other terms. We create these parts of your Account for such things as your purchases, Cash Advances and Special Transfers.

• **"Special Transfer"** means a Transfer posted to the Special Transfer Segment of your Account and not to your purchase Segment.

• **"Statement"** means a document or information we provide to you showing Account information including, among other things, transactions made to your Account during a time period. We might also refer to your Statement as a "Periodic Statement" or a "Billing Statement."

• **"Transfers"** means balances transferred from other Accounts to this Account and includes Balance Transfers and Special Transfers.

• **"Truth in Lending Disclosures"** means any Account information we provide to you that is required by the federal Truth in Lending Act and Regulation Z. These include your application and solicitation disclosures, Account opening disclosures, subsequent disclosures, Statements and change in terms notices.



© 2010 Capital One
Capital One is a federally registered service mark.
All rights reserved.

**17**       CCF Customer Agreement 088

M-101504
BR185894

• **"Account"** means your Card Account with us.

• **"Authorized User"** means one or more persons who may use the Card but is not responsible for the repayment of the Account.

• **"Balance Transfer"** means a Transfer posted to the purchase Segment of your Account unless otherwise described in your Truth in Lending Disclosures.

• **"Billing Cycle"** means a period of time that might vary in length but is approximately 30 days. The specific period of time is described on each Statement. However, you will have a Billing Cycle even if a Statement is not required. We will often specify a Billing Cycle by the month in which its closing date occurs as the "Statement Closing Date." For example, a March Billing Cycle will have a closing date in March. We may also refer to a Billing Cycle as a "Billing Period." If your Account balance has charged off, we may switch to quarterly Billing Cycles to your Account.

• **"Business Day"** means any day in which Capital One's offices are open for the processing of payments and credits.

• **"Card"** means any Capital One credit Card associated with your Account, which includes all renewals and substitutions. It also means any other access device for your Account we give you that allows you to obtain credit, including any Account number and any Access Check.

• **"Cash Advance"** means using the Card to obtain loans in cash in things we consider cash equivalents. Cash equivalents include wire transfers, travelers checks, money orders, foreign currency, lottery tickets, gaming chips and wagers. Cash Advances are posted to the Cash Advance Segment of your Account and not to your purchase Segment.

• **"Fees"** means charges imposed on your Account that are not based on the Annual Percentage Rates.

• **"Interest Charges"** means any charges to your Account based on the application of Annual Percentage Rates.

• **"Item"** means a check, draft, money order or other negotiable instrument you use to pay your Account. This includes any image of these instruments. This does not include an Access Check.

# EXHIBIT C

 P.O. Box 30285
Salt Lake City, UT 84130-0285

Thank you for contacting us about the terms on your Capital One® account. Your current terms are listed below and on the following pages:

| Credit Limit | $30,000.00 |
|---|---|

| | |
|---|---|
| Annual Percentage Rate (APR) for Purchases and Balance Transfers | 13.900 %<br><br>This APR will vary with the market monthly based on Prime plus 10.650 %. |
| APR for Cash Advances | 24.900 %<br><br>This APR will vary with the market monthly based on Prime plus 21.650 %. |
| APR's For Special Transfers   #1 | N/A |
| #2 | N/A |
| Penalty APR and When It Applies | 29.400 %<br>This APR will vary with the market monthly based on Prime plus 26.150 %.<br>This APR may be applied to your account if you make a late payment.<br>How Long Will the Penalty APR Apply? If APRs are increased for a payment that is more than 60 days late, the Penalty APR will apply indefinitely unless you make the next six consecutive minimum payments on time following the rate increase. |
| Paying Interest | Your due date is at least 25 days after the close of each billing cycle. We will not charge interest on new purchases, provided you have paid your previous balance in full by the due date each month. We will begin charging interest on cash advances and transfers on the transaction date. |
| Minimum Interest Charge | If you are charged interest, the charge will be no less than $0.50. |

Current Terms Letter / vP1.5.9 / 8848 / DFK854
Encl: 0058

EXHIBIT C PAGE 1

| | |
|---|---|
| Annual Fee | $59.00 |
| **Transaction Fees**<br>Transfer Fee | NOTE:   Please review the terms of any Transfer or Access Check offer, as the terms may be different for each offer you receive. |
| Cash Advance Fee | Either $10.00 or 3.0% of the amount of each cash advance, whichever is greater. This applies to cash advances, ATM transactions and cash convenience checks. |
| Foreign Transaction Fee | None |
| **Penalty Fees**<br>Late Payment | Up to $35.00 |
| Over the Credit Limit | None |
| Returned Payment | Up to $35.00 |

**How We Will Calculate Balances:**
We use a method called "average daily balance" (including new purchases). See *How Do You Calculate the Interest Charge?* below for more details.

**Can I Lose My Introductory/Promotional APR?**
If your account has an introductory/promotional rate, we may end that APR and apply the Penalty APR if you make a late payment.

## Things You Should Know About This Card

## Can You Change My Account Terms?

We can change the terms of your account as permitted by law. When required, we will send you notice before doing so.

## How Do You Calculate Variable Rates?

Variable rates will be based on either the Prime Rate or the London Interbank Offered Rate (LIBOR) as indicated above. Variable rates may change when the associated Rate Index changes. We calculate your variable rate by adding a percentage to the Rate Index published in *The Wall Street Journal* on the 25th day of each month. If the Journal is not published on that day, then see the immediately preceding edition. If your Rate Index changes monthly, your new rate will take effect on your next billing period. If your Rate Index changes quarterly, your new rate will take effect on the first day of your January, April, July and October billing period.

Current Terms Letter / vP1.5.9 / 8848 / DP/K854
Encl: 0058

EXHIBIT C PAGE 2

## What Are The Daily Periodic Rates Used To Calculate My Interest?

We determine your daily periodic rate by dividing the corresponding Annual Percentage Rates by 365 and round to the nearest 1/100,000th of 1%, not to exceed the maximum allowed by applicable law. If the daily periodic rates and corresponding Annual Percentage Rates increase, the interest charge will increase and your minimum payment may be greater. See *How Do You Calculate the Interest Charge?* below for more details. The daily periodic rates applicable to your account are as follows:

Purchase APR:  0.03808%

Cash APR:  0.06822%

Penalty APR:  0.08055%

## How Can I Avoid Paying Interest Charges?

Each month you pay your "New Balance" in full by the due date, you will have a minimum grace period of 25 days with no interest charge on all new 1) purchases, 2) balance transfers, 3) special purchases and 4) other charges. If you have been paying your account in full with no interest charges applied and you do not pay your next bill in full, prorated interest charges will be assessed. There is no grace period on cash advances, special transfers, or on any new transaction when there is an unpaid balance from a previous bill.

## How Is The Interest Charge Applied?

Interest charges accrue from the 1) date of the transaction, 2) date the transaction is processed or 3) first calendar day of the billing period. Interest charges accrue on every unpaid amount until it is paid in full. This means you may owe interest charges even if you pay the entire "New Balance" one month, but did not do so for the previous month. Unpaid interest charges are added to the proper segment of your Account.

## How Do You Calculate The Interest Charge?

For each segment of your account, we calculated your total interest charge by multiplying your average daily balance by the daily periodic rate and multiplying the result by the number of days in the billing period. Due to rounding or a minimum interest charge, this calculation may vary slightly from the interest charge actually assessed.

To determine your average daily balance: 1) add the daily balances together and 2) divide the sum by the number of days in the billing cycle.
To determine your daily balance: 1) take the beginning balance and add in new transactions and the periodic interest charge on the previous day's balance. 2) Subtract any payments and credits for that segment as of that day. However, if you paid your previous month's balance in full (or if your balance was zero or a credit amount), new transactions which post to your purchase or special purchase segments are not added to the daily balances. Also, transactions that are subject to a grace period are not added to the daily balances.

©2010 Capital One. Capital One is a federally registered service mark. All rights reserved. Products and services offered by Capital One Bank (USA), N.A..
Capital One supports information privacy protection; see our website at www.capitalone.com.

EXHIBIT C PAGE 3

# EXHIBIT D

Gmail - Priscilla Barton, transfer a balance and save

https://mail.google.com/mail/u/0/?ui=2&ik=2cf0958f52&view=pt&q=capital one balance...



**Priscilla Barton**

# Priscilla Barton, transfer a balance and save

1 message

Capital One <capitalone@email.capitalone.com>
Reply-To: capitalone <1642c6f9flayfivciarro6diaaaaab2laqzhvu2ohbyyaaaaa@email.capitalone.com>
To:

Mon, Jul 11, 2011 at 6:27 AM

Add us to your address book.
¤ Help prevent fraud.
Log in to your account.



**Capital**One®



## Save when you transfer at a low 0% APR

**Transfer a Balance**

### Transfer and Save

Get a low 0% APR for 6 months

**[button]**

Frequently asked questions

Re: Your account ending in 1207

Priscilla Barton,

Want a quick and easy way to save? Transfer your higher-rate balances to your Capital One® account, and they'll stay at a low 0% APR for 6 months. After that, they will go to 13.90% APR. This is a variable rate, as previously disclosed.

Keep in mind, you'll pay a transaction fee of 3% of each transaction amount.

Just log in to your account or call 1-877-534-6838 by August 1, 2011 to transfer a balance at this low rate. It's fast and convenient—start saving!

**Transfer a Balance**

**EXHIBIT D PAGE 1**

2/28/12 8:44 AM

**TRANSFER BALANCE**

**Important Information from Capital One**

Contact Us | Privacy

This e-mail was sent to ▮▮▮▮▮▮▮ nd contains information directly related to your account with us, other services to which you have subscribed, and/or any application you may have submitted.

We may decline to process your request for this offer. If we do, we will notify you. Your request may be declined if:
- Your account is delinquent, overlimit, charged-off, or closed
- You have filed for bankruptcy
- Your card has been reported lost or stolen, or our fraud system prevents the offer fulfillment
- A term of your account relevant to the offer (like credit line, APR or your special transfer rate) has changed since we mailed the offer

If you have an authorized user on your Account, an authorized user cannot request a transfer. All other terms and conditions for your Account remain in full force and effect.

All balances transferred during the offer period will post to one of your Special Transfer segments.

Capital One and its service providers are committed to protecting your privacy and ask you not to send sensitive account information through e-mail. If you are not a Capital One customer and believe you received this message in error, please notify us by responding to this e-mail.

©2010 Capital One. Capital One is a federally registered service mark. All rights reserved. 15000 Capital One Drive, Attn: 12036-0111, Richmond, Virginia 23238. To contact us by mail, please use the following address: Capital One, PO Box 30285, Salt Lake City, Utah 84130-0285

EBM95 02 0001

**EXHIBIT D PAGE 2**